VICKIE ANN BROWN, ADMINISTRATRIX OF THE ESTATE FOR MARY LOUISE BROWN v. KENNETH MICHAEL FLOWE, M.D.

No. 110PA98

(Filed 31 December 1998)

### Judgments § 652 (NCI4th)— prejudgment interest—settlement and verdict—calculation

A medical malpractice action which was settled against some parties and which reached a verdict against this defendant was remanded for recalculation of the judgment by adding prejudgment interest at the legal rate to the entire compensatory damages award as N.C.G.S. § 24-5(b) requires; adding interest at the legal rate to the settlement sum from the date of settlement until the date of judgment; and subtracting the second calculation from the first to determine the amount of compensatory damages defendant owes to plaintiff. This method harmonizes N.C.G.S. § 1B-4 and N.C.G.S. § 24-5(b) by giving effect, fairly to both parties, to a legislative intent to both compensate plaintiffs with prejudgment interest on their compensatory damage awards and give defendants the benefit of an appropriate setoff for the portion of that award already paid by a settling codefendant.

Justice WYNN did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 128 N.C. App. 668, 496 S.E.2d 830 (1998), affirming in part, reversing in part, and remanding a judgment entered by Everett, J., on 30 September 1996 in Superior Court, Pitt County. Heard in the Supreme Court 16 November 1998.

*Faison & Gillespie, by O. William Faison and John W. Jensen, for plaintiff-appellant.*

*Walker, Barwick, Clark & Allen, L.L.P., by Thomas E. Barwick, for defendant-appellee.*

WHICHARD, Justice.

This appeal arises from a medical malpractice action brought by Vickie Ann Brown, administratrix of the estate of Mary Louise Brown, against defendant Dr. Kenneth Flowe, a Pitt County Memorial Hospital emergency-room physician. Defendant and a medical resident performed surgery on the decedent, Mary Louise Brown, at Pitt County Memorial Hospital. Brown died while undergoing the surgery. Prior to filing suit, plaintiff entered a settlement agreement with the medical resident and the hospital, releasing them from liability in consideration of the payment of $178,486.76. On 15 July 1994 plaintiff filed the present action against defendant. The matter was tried before a jury at the 12 August 1996 Civil Session of Superior Court, Pitt County, and the jury returned a verdict finding defendant negligent and awarding compensatory damages in the amount of $250,000. Pursuant to N.C.G.S. § 24-5(b), the trial court applied prejudgment interest at the legal rate of eight percent to the jury's verdict, resulting in a compensatory damages award of $293,013.70. A portion of the award, $71,513.24, was to bear post-judgment interest as well. The trial court allowed plaintiff's motion to tax costs to defendant in the amount of $42,104.44. Aggregating these numbers, the court entered a judgment in the amount of $335,115.14, to which it credited the settlement amount of $178,486.76. The trial court then ordered defendant to pay plaintiff $156,628.38.

Defendant appealed, assigning error, *inter alia*, to this method of calculating prejudgment interest. The Court of Appeals agreed with defendant and held that "the trial court erred in awarding plaintiff prejudgment interest on the full amount of the verdict, and we remand the case for prejudgment interest to be assessed after applying a credit in the amount of the $178,486.76 settlement to the verdict." *Brown v. Flowe*, 128 N.C. App. 668, 674, 496 S.E.2d 830, 834 (1998). On 8 July 1998 this Court allowed plaintiff's petition for discretionary review. The question presented is how to reduce a claim against a nonsettling tort-feasor under N.C.G.S. § 1B-4 when prejudgment interest under N.C.G.S. § 24-5(b) applies.

Two statutes interact in this situation. First, N.C.G.S. § 24-5(b) provides:

(b) Other Actions.—In an action other than contract, the *portion of money judgment designated by the fact finder as compensatory damages bears interest* from the date the action is instituted until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C.G.S. § 24-5(b) (1991) (emphasis added). Second, N.C.G.S. § 1B-4 provides, in pertinent part:

[A] *release or a covenant not to sue* . . . given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(1) . . . *reduces the claim against the others* to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

N.C.G.S. § 1B-4 (1983) (emphasis added).

"Legislative intent controls the meaning of a statute." *Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986). To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish. *See id.* at 81-82, 347 S.E.2d at 828. First among these considerations, however, is the plain meaning of the words chosen by the legislature; if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings. *Hyler v. GTE Prods. Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993). The Court's analysis therefore properly begins with the words themselves. *Correll v. Division of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992).

This Court previously has determined "judgment" to be unambiguous and has given that word its plain meaning when interpreting N.C.G.S. § 97-10.2 and Rule 68 of the North Carolina Rules of Civil Procedure. We held that "judgment" indicates the final amount of money due to the plaintiff, consisting of the verdict, costs, fees, and interest. *See Hieb v. Lowery*, 344 N.C. 403, 410, 474 S.E.2d 323, 327 (1996); *Poole v. Miller*, 342 N.C. 349, 352-53, 464 S.E.2d 409, 411

(1995). A judgment is rendered by the court and is therefore a judicial act, in contrast to a verdict that is rendered by a jury. *Hieb*, 344 N.C. at 410, 474 S.E.2d at 327; *Poole*, 342 N.C. at 352, 464 S.E.2d at 411. Therefore, the judgment was the final verdict, $250,000, *plus* costs, fees, and interest, for a total of $335,115.14.

Under section 24-5, the "portion of money judgment designated by the fact finder as compensatory damages bears interest." N.C.G.S. § 24-5(b). The jury found $250,000 to be "damages . . . the estate of Mary Louise Brown, Vickie Brown, Administratrix, [was] entitled to recover by reason of the injury to and death of Mary Louise Brown." Therefore, the trial court properly calculated interest, from the date the action was instituted, on $250,000, the portion of the judgment which the jury found to be compensatory damages. There is no indication in the statute that the compensatory portion *minus settlements* bears interest; rather, the statute says simply that the "compensatory damages" portion of the judgment bears interest. *Id.* The statutory language is clear, and this Court therefore must not engage in judicial construction. *Poole*, 342 N.C. at 351, 464 S.E.2d at 410.

We must, though, determine the application of section 1B-4 to section 24-5. The release at issue was executed before this suit was filed. The hospital and the surgical resident paid $178,486.76 to plaintiff in return for being released from liability for plaintiff's decedent's injury and death. This release "reduces the claim against the others" by the amount of the payment. N.C.G.S. § 1B-4.

While "judgment" as used in section 24-5 has a plain meaning under the decisions of this Court, "claim" as used in section 1B-4 does not. The section itself is silent as to when or how to reduce the "claim" against the remaining tort-feasors, and this Court has not previously decided when or how to reduce a claim under section 1B-4 when prejudgment interest under section 24-5 applies.

"[W]here a statute is ambiguous, judicial construction must be used to ascertain the legislative will. The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) (citation omitted). A question of statutory interpretation is ultimately a question of law for the courts. *See Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 642, 256 S.E.2d 692, 696 (1979). Although sections 1B-4 and 24-5 both apply in tort actions, they neither refer to each other nor use the same terminology. When multiple statutes address a single

subject, this Court construes them *in pari materia* to determine and effectuate the legislative intent. *See Board of Adjust. v. Town of Swansboro*, 334 N.C. 421, 427, 432 S.E.2d 310, 313 (1993). Our task is to give effect, if possible, to all sections of each statute and to harmonize them into one law on the subject. *See Williams v. Williams*, 299 N.C. 174, 180-81, 261 S.E.2d 849, 854 (1980). We have held that the probable intent of the prejudgment interest statute, section 24-5, is threefold: (1) to compensate plaintiffs for loss of the use of their money, (2) to prevent unjust enrichment of the defendant by having money he should not have, and (3) to promote settlement. *See Powe v. Odell*, 312 N.C. 410, 413, 322 S.E.2d 762, 764 (1984) (interpreting the 1983 version of section 24-5). We now must decide what method of calculation best implements the provisions of each statute as well as effectuates the legislative intent.

Both parties cite case law assertedly consistent with their respective positions. In support of her contention that the settlement sum should be subtracted after the prejudgment interest is calculated, plaintiff notes two cases from this Court decided before the prejudgment-interest statute was enacted. First, this Court has said that the amount paid for a covenant not to sue is "a credit to be entered on the total recovery." *Slade v. Sherrod*, 175 N.C. 346, 348, 95 S.E. 557, 558 (1918). Later, the Court stated that "the weight of both authority and reason is . . . that any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage[,] should be held for a credit on the total recovery in any action for the same injury or damage." *Holland v. Southern Pub. Utils. Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935). Plaintiff also cites a decision in which the Court of Appeals held that a defendant "was entitled to a credit against the judgment in the amount of $2,000, the sum paid by the 'joint-tort-feasor.' " *Ryder v. Benfield*, 43 N.C. App. 278, 287, 258 S.E.2d 849, 855 (1979). None of these cases, however, deal with the issue of prejudgment interest and the interaction between sections 24-5(b) and 1B-4.

One case plaintiff cites seems to use "total recovery" and "verdict" interchangeably. *See Ryals v. Hall-Lane Moving & Storage Co.*, 122 N.C. App. 134, 468 S.E.2d 69 (1996). In *Ryals* the trial court reduced a $25,000 jury verdict to $15,000 because of a $10,000 settlement between the plaintiff and a codefendant. Although the Court of Appeals said the settlement amount applies to the "total recovery," citing *Holland*, the jury's *damages* award was reduced to $15,000. *See id.* at 141-42, 468 S.E.2d at 74-75. There was no mention of prejudg-

ment interest, and the Court of Appeals found no error in the trial court's calculation. Again, this case gives us no guidance as to the proper interaction between 24-5(b) and 1B-4.

Defendant cites numerous cases in which our courts implicitly have approved his position, which calls for a subtraction of settlement amounts from the compensatory damages verdict before prejudgment interest is calculated. In *Baxley v. Nationwide* this Court addressed the definition of "damages" in the context of an auto accident in which one insurer had tendered its policy limits of $25,000 to the clerk of court while the other went to trial on its underinsured-motorist coverage. In defining damages, the Court had to determine what amount the insured was "legally entitled to recover" from the tort-feasor. The Court stated: "We believe the insured is *legally entitled to recover* the total amount of money that the judgment says she is entitled to recover from the tort-feasor. In this case, the judgment awarded the insured $100,000 in compensatory damages and prejudgment interest on $75,000." *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 7, 430 S.E.2d 895, 899 (1993). Defendant also points to this Court's per curiam opinion affirming the Court of Appeals' decision in *Beaver v. Hampton*, 106 N.C. App. 172, 416 S.E.2d 8 (1992), *aff'd in part and vacated in part*, 333 N.C. 455, 427 S.E.2d 317 (1993) (per curiam). In *Beaver* the jury returned a $30,000 compensatory damages verdict in an auto accident case. One insurer had tendered $25,000 after the claim was filed but prior to trial. The Court of Appeals held that the trial court should have awarded prejudgment interest on the entire $30,000, including the $25,000 paid by the liability carrier. However, the $25,000 bore prejudgment interest only from the filing date until it actually was paid; prejudgment interest continued for the entire trial only on the remaining $5,000. *See id.* at 179, 416 S.E.2d at 12. This Court explicitly affirmed the Court of Appeals' determination that prejudgment interest should be awarded on the full amount of the judgment. *See Beaver*, 333 N.C. at 457, 427 S.E.2d at 318. Again, though, *Baxley* and *Beaver* did not speak directly to the proper interaction between sections 24-5(b) and 1B-4.

The Court of Appeals did not address any prejudgment interest issue in *Braddy v. Nationwide*, but the recitation of the damages and judgment computations there reveals that the trial court subtracted the amount of the settlement before calculating prejudgment interest. *See Braddy v. Nationwide Mut. Liab. Ins. Co.*, 122 N.C. App. 402, 405, 470 S.E.2d 820, 821, *appeal dismissed and disc. rev. denied*, 343 N.C. 749, 473 S.E.2d 610 (1996). It appears, therefore, that some trial

courts are applying the statutes as defendant urges. Again, *Braddy* did not specifically present the issue of harmonizing sections 24-5(b) and 1B-4.

As noted, one legislative purpose in enacting the prejudgment interest provision of the statute was to compensate plaintiffs for loss of the use of their money between the filing of the suit and the entry of the judgment. *Powe*, 312 N.C. at 413, 322 S.E.2d at 764. We do not believe, however, that the legislature intended to overcompensate plaintiffs. Here, plaintiff's preferred method of calculation would do that by awarding interest on money the use of which she has had since the time of the codefendants' settlement. "Both reason and justice decree that there should be collected no double compensation, for any injury, however many sources of compensation there may be." *Holland*, 208 N.C. at 292, 180 S.E. at 594. Defendant's preferred method, however—subtracting the settlement amount from the compensatory damages verdict before calculating prejudgment interest— is prohibited by the plain language of N.C.G.S. § 24-5, which requires calculation of prejudgment interest on the entire compensatory-damages verdict. We do not believe the General Assembly intended either result, and we thus decline to adopt either method.

The trial court calculated the prejudgment interest as the General Assembly has directed, that is, on the entire compensatory damages award without subtracting settlements. To effectively, accurately, and fairly reduce the "claim" against a nonsettling tort-feasor as section 1B-4 of the Uniform Contribution Among Tort-Feasors Act requires, the changing value of that claim over time must be considered. The scheme adopted by the United States Court of Appeals for the Second Circuit in interpreting similar New York statutes does this effectively by converting the settlement amount to judgment-time dollars, using the same legal rate of interest that is used in calculating prejudgment interest on the compensatory damages verdict, then subtracting the adjusted settlement figure from the adjusted compensatory damages figure. *See In re Joint E. Dist. & S. Dist. Asbestos Litig.*, 18 F.3d 126 (2d Cir. 1994). Calculation under this method consistently results in a plaintiff being compensated for the loss of use of his or her money at, rather than below or above, the legal rate of interest. Neither plaintiffs nor defendants are unjustly enriched, and defendants are not unfairly penalized for exercising their legal right to defend against a claim. This method harmonizes sections 1B-4 and 24-5(b) by giving effect, fairly to both parties, to the legislative intent to both compensate plaintiffs with prejudgment interest on their compensatory dam-

**BROWN v. FLOWE**

[349 N.C. 520 (1998)]

age awards and give defendants the benefit of an appropriate setoff for the portion of that award already paid by a settling codefendant. *See id.* at 133; *Williams*, 299 N.C. at 180-81, 261 S.E.2d at 854.

Accordingly, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further remand to the Superior Court, Pitt County, for recalculation of the judgment by (1) adding prejudgment interest at the legal rate to the entire compensatory damages award as N.C.G.S. § 24-5(b) requires, (2) adding interest at the legal rate to the settlement sum from the date of settlement until the date of judgment, and (3) subtracting the second calculation from the first to determine the amount of compensatory damages defendant owes to plaintiff.

REVERSED AND REMANDED.

Justice WYNN did not participate in the consideration or decision of this case.