***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. If Plaintiff is entitled to compensation, her compensation rate is the maximum for the year of 2003, $674.00 per week, pursuant to N.C. Gen. Stat. § 97-29.
2. The Plaintiff claims injury to her back, hips, left leg, right leg, and groin. The date of the alleged injury by accident is May 8, 2003. The date of her disability is May 8, 2003. Plaintiff contends that she is entitled to compensation from the date of the alleged injury by accident to the present and continuing as necessary.
3. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 (from the hearing on March 14, 2005) — Industrial Commission forms, Defendants' Motion to Dismiss, and Plaintiff's Response to the same.
 b. Stipulated Exhibit #2 (from the hearing on June 1, 2005) — Discharge Papers from the Department of the United States Army (2 pages).
 c. Stipulated Exhibit #3 (from the hearing on June 1, 2005) — Medical Records of the Plaintiff (indexed and paginated from page 1-190).
 *********** RULING ON DEFENDANT'S MOTION TO DISMISS
Defendant moved to dismiss Plaintiff's claim on the ground that the Industrial Commission did not have jurisdiction over Plaintiff's claim. Defendant contends that at the time of Plaintiff's injury she did not fit within the definition of "employee" under N.C. Gen. Stat. § 97-2(2) because she was not on "State active duty under orders of the Governor." Plaintiff is a *Page 3 
member of the North Carolina National Guard. At the time of her injury she was on "active duty for training" in Hunter-Liggett, California, under orders issued by the State of North Carolina, Office of the Adjutant General. No federal order had been issued calling Plaintiff into the service of the United States. Defendant argues that the National Guard "is a department of the United States Army, which is a military branch of the federal government and not an agency, department, or institution of the State of North Carolina." Therefore, Plaintiff was not a State employee at the time of her injury and she was not performing duties under orders of the Governor.
Plaintiff contends that the Office of the Adjutant General is under the Governor of the State of North Carolina and since the only orders calling Plaintiff into "active duty for training" were State orders, Plaintiff was "on State active duty under orders of the Governor."
Upon consideration of the applicable law and the arguments of counsel, it is ordered that Deputy Commissioner Stanback's Interlocutory Opinion and Award denying Defendant's Motion to Dismiss is Affirmed.
 ***********
Based on the foregoing Stipulations and the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 30 years old. She has had two years of college, but no other training except what she has received through the military.
2. On May 8, 2003, Plaintiff was a member of the North Carolina National Guard, having attained the rank of SPC/E4. Simultaneously, she was employed in a civilian position as *Page 4 
a personal assistant. The physical demands of her personal assistant job included, but were not limited to, physically moving the individual to whom she was assigned, and lifting, pushing, pulling, and carrying heavy weight (as the individual to whom she was assigned was substantially overweight).
3. In the North Carolina National Guard, Plaintiff was assigned to a unit and company based out of Winston-Salem, North Carolina, specifically located at 2000 Silas Creek Parkway.
4. On May 8, 2003, Plaintiff was participating in active duty training at Fort Hunter-Liggett in California as a member of the North Carolina National Guard. On this date, Plaintiff was injured while trying to avoid getting hit by a truck that was backing up. Plaintiff jumped onto a chain link fence and tried to climb the fence while jumping out of the way. Plaintiff's leg became entangled in the fence, causing her body to contort and causing an immediate and sudden injury to her back, as well as her hips, left leg, right leg, and groin.
5. Following her injury by accident, Plaintiff received her initial medical treatment that same day at Mee Memorial Hospital in California, at which time she suffered symptoms including, but not limited to, pain into the left hip, left groin, left knee, and alternating numbness and pain radiating into her left leg and left foot.
6. She was initially diagnosed upon discharge that day as having musculoskeletal pain, and she was given crutches and told to follow up with the base clinic. Plaintiff then returned to Mee Memorial Hospital on May 12, 2003, due to continued pain in the left groin muscle and left knee.
7. Upon returning to North Carolina from California, Plaintiff received follow-up care through Womack Army Medical Center in Fort Bragg, North Carolina. Her treatment there *Page 5 
included physical therapy sessions and prescriptions for pain medications, including Ultram and Vioxx. She continued treatment through June, July, and August 2003 with physical therapy and pain medication, as ordered by the Womack Army Medical Center Family Practice Clinic.
8. On October 10, 2003, Plaintiff was referred by Womack Army Medical Center for further physical therapy at CompRehab in Winston-Salem, North Carolina. Upon that referral, Plaintiff was to undergo 2-3 visits per week for 6 to 8 weeks at CompRehab. However, Plaintiff was unable to pay for any further therapy sessions, and thus was unable to attend her scheduled sessions. As a result, she was discharged from physical therapy through CompRehab.
9. Following an examination at Womack Army Medical Center on November 6, 2003, Plaintiff was found to be "Fit For Duty" by Anthony McPherson, PA-C, as of that date. PA-C McPherson indicated that Plaintiff was incapacitated and unable to work from May 8, 2003 through November 5, 2003.
10. Thereafter, on December 8, 2003, Plaintiff saw Dr. George Salama, of Salama Chiropractic Center in Greensboro, North Carolina, for one visit. Dr. Salama referred her for an MRI, which was subsequently completed on December 9, 2003, at Moses Cone Hospital in Greensboro, North Carolina. This MRI showed a small right paracentral disc protrusion at L5-S1 with slight compression and a shallow disc protrusion at L4-5.
11. Plaintiff was then treated on December 12, 2003, at Wesley Long Emergency Room in Greensboro, North Carolina for complaints of continued low back pain. At that time, Plaintiff had been prescribed Oxycodone, Acetaminophen, Prednisone, and Skelaxin. Plaintiff was allowed to return to work with light-duty restrictions, including no lifting over one pound for a one-week period of time. Also at the time of her examination at Wesley Long Emergency Room, Plaintiff was referred to Dr. Phillips Carter at Greensboro Orthopaedic Center. On *Page 6 
December 15, 2003, Plaintiff presented to Dr. Carter for treatment. Dr. Carter reviewed the prior MRI from December 9, 2003, and referred Plaintiff for an MRI of her hip because he suspected that she had "some aseptic necrosis." He also gave her prescriptions for Toradol and Darvocet. Plaintiff missed follow-up appointments scheduled with Dr. Carter.
12. On December 29, 2003, Plaintiff completed a "Fit For Duty" evaluation at Fort Bragg, North Carolina, which identified her diagnoses as severe low back pain syndrome, chronic left knee pain, and chronic left shoulder pain. Although the examination concluded that she was fit for duty, Plaintiff was assigned specific, temporary work restrictions, which included no lifting, no running, no physical training, and walking only at her own pace, as well as an indication that she should not be deployed. She was also referred for another orthopaedic evaluation.
13. On February 3, 2004, Plaintiff completed a second "Fit For Duty" examination, which concluded that she failed to meet the retention criteria. At that time, it was recommended that she complete a Medical Evaluation Board, or "MEB."
14. On February 3, 2004, permanent work restrictions were assigned, which included no running, no carrying of the rucksack, no jumping, no sit-ups, and no push-ups. Her permanent restrictions also included no lifting more than 25 pounds, and that she can walk only at her own pace for no more than one and one-half miles.
15. In February 2004, Plaintiff saw Dr. Kip Corrington at Urgent Medical Care for complaints of continued lower back pain, upper leg numbness, and left foot numbness. Upon examination, Dr. Corrington referred her to an orthopedist or neurologist. However, with no specific referral and no method of payment for such a visit, Plaintiff was unable to follow up on that referral. *Page 7 
16. On April 30, 2004, based upon the results of the February 3, 2004, "Fit For Duty" examination, Plaintiff completed the MEB, under the care of Dr. Mary Gabriel. Dr. Gabriel concluded that Plaintiff failed to meet the retention criteria, and recommended that she be referred to the Physical Evaluation Board (PEB). The PEB was then held on June 9, 2004, and this Board concluded that Plaintiff was physically unfit, that she had a combined disability rating of 10%, and that she should be discharged with severance pay, which is administered by the Veterans' Administration of the federal government. Based upon this PEB, Plaintiff was thereafter discharged from the Army Reserve effective August 13, 2004, but she was not simultaneously discharged from the North Carolina National Guard.
17. Upon filing for the severance pay available through the Veterans' Administration of the federal government, Plaintiff was found to be eligible for benefits based upon a total disability rating of 30%, which consisted of a 10% disability to the back, 10% to the left hip, and 10% to the groin resulting from the injury by accident. As a result, Plaintiff was awarded benefits in the amount of $330.00 per month for approximately one year. At the conclusion of that time period, her benefits increased to $439.00 per month and will continue for the rest of her life. These benefits are provided by the federal government and are completely separate from her status as a member of the North Carolina National Guard.
18. For her incapacitation period from May 8, 2003, through November 5, 2003, Plaintiff received approximately $2,676.80 per month in gross disability pay, called "incapacitation pay," (approximately $2,382.00 per month in net disability pay). This incapacitation pay was actually paid with federal monies, but through the State of North Carolina. This incapacitation pay was not paid from monies of Defendant-Employer. *Page 8 
19. Plaintiff received approximately $273.00 per month from May 8, 2003 through approximately June 2004. Defendant-Employer paid her this pay for attending her weekend and monthly duty for the North Carolina National Guard. The payments for Plaintiff's weekend and monthly duty ceased in approximately June 2004. Plaintiff's weekend/monthly duty from May 8, 2003, through June 2004 was limited due to her restrictions from her injury.
20. As a result of her permanent work restrictions and medical condition resulting from her injury, Plaintiff has been unable to return to work in her civilian job as a personal assistant since her injury and she was subsequently determined to be physically unfit to continue serving in the North Carolina National Guard. Except for a short stint of 2-3 weeks when she tried to work at Church's Chicken in Winston-Salem, North Carolina, in early 2004 but had to stop due to problems related to her injury, Plaintiff has not returned to work in any capacity since she was given permanent work restrictions on February 3, 2004. Plaintiff needs further evaluation from a neurosurgeon or orthopedist to determine the extent of her medical condition and disability.
21. Beyond the benefits provided by monies through the federal government and the past payments for Plaintiff's weekend/monthly North Carolina National Guard duty, Plaintiff has received no benefits directly from Defendant-Employer or through her former civilian employer. She has received no temporary total disability compensation or any other workers' compensation benefits from Defendant. Defendant has completely denied this claim.
22. The Full Commission finds that at the time of Plaintiff's injury she was an employee as defined under the provisions of N.C. Gen. Stat. § 97-2(2). At the time of Plaintiff's injury, she was on active duty training with the North Carolina National Guard under orders of the Governor. Plaintiff's original order to active duty for training was issued on March 25, 2003, *Page 9 
by the State of North Carolina, Office of the Adjutant General, by Charles E. Jackson, Col, MP, NCARNG, on behalf of the Adjutant General. The Full Commission takes judicial notice of the fact that the Adjutant General is appointed by the Governor of the State of North Carolina and the Office of the Adjutant General is a division of the North Carolina Department of Crime Control and Public Safety. The official order ordering Plaintiff to active duty for training was issued by a state official. There is no federal order ordering Plaintiff to active duty for training. Plaintiff testified that she believed she was on active duty for training under orders of the Governor through the Office of the Adjutant General.
23. The Full Commission finds that Plaintiff suffered an injury by accident on May 8, 2003, when she jumped onto a chain link fence and tried to climb the fence while jumping out of the way of a truck backing up. Plaintiff has presented sufficient medical evidence to establish a causal relationship between her May 8, 2003, workplace injury by accident and the conditions for which she continues to receive treatment.
24. As a result of her injury by accident, Plaintiff has been disabled from work in her civilian job from May 8, 2003, through the date of hearing before the Deputy Commissioner and continuing. Plaintiff is also physically unfit to serve in the North Carolina National Guard and needs further evaluation to determine the extent of her disability after February 3, 2004.
25. The medical treatment Plaintiff has received for her compensable injury by accident was reasonably required to effect a cure, provide relief, or to lessen her disability.
26. Plaintiff's compensation rate is the maximum for the year of 2003, $674.00 per week.
27. Defendant should receive a credit only for the $273.00 per month that Plaintiff received in pay from Defendant-Employer while attending her weekend/monthly duty for the *Page 10 
North Carolina National Guard from the date of the injury in May 2003 through June 2004. Defendant should not receive a credit toward the total disability compensation owed to Plaintiff as a result of the "incapacitation pay" Plaintiff received since those payments were actually paid with federal monies.
28. In addition, Defendant is further not entitled to receive a credit for the ongoing monthly payments received as severance pay from the Veterans' Administration of the federal government for permanent disability as these payments likewise are paid with federal monies and are not provided by Defendant-Employer.
29. Defendant had actual notice of Plaintiff's injury at the time that it happened and was not prejudiced by Plaintiff's late filing of a Form 18.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. At the time of her injury, Plaintiff was an "employee" as defined under the North Carolina Workers' Compensation Act. The relevant provision of N.C. Gen. Stat. § 97-2(2) states:
 The term "employee" shall include members of the North Carolina national guard while on State active duty under orders of the Governor and members of the North Carolina State Defense Militia while on State active duty under orders of the Governor.
2. Defendant contends that the statutory change in 1999 intended to exclude employee status for the type of duty Plaintiff was performing at the time of her injury. Prior to 1999, N.C. Gen. Stat. § 97-2(2) stated:
 The term "employee" shall include members of the North Carolina national guard, except when called into the service of the United States, and members of the North Carolina State guard, and *Page 11 
members of these organizations shall be entitled to compensation for injuries arising out of and in the course of the performance of their duties at drill, in camp, or on special duty under orders of the Governor."
3. On July 1, 1999, the House Ways and Means Committee convened to discuss Senate Bill 877: Workers' Compensation for National/State Guard. The Bill Analysis produced with the minutes from that meeting reads as follows:
 SUMMARY: Senate Bill 877 clarifies when members of the N.C. National Guard and the N.C. State Guard are employees subject to the Workers' Compensation Act.
 CURRENT LAW: The North Carolina Workers' Compensation Act provides for the compensation for personal injury or death by accident arising out of and in the course of an individuals' employment. For purposes of determining who is covered by the act, specific terms are defined — including `employee'. The term currently includes members of the North Carolina National Guard, except when called into the service of the United States, and members of the North Carolina State Guard. Members of both organizations are entitled to compensation for injuries arising out of and in the course of the performance of their duties at drill, in camp, or on special duty under orders of the Governor.
 BILL ANALYSIS: Senate Bill 877 amends the definition of `employee' under the North Carolina Workers' Compensation Act to include members of the North Carolina National Guard and members of the North Carolina State Guard while on State active duty under orders of the Governor.
 EFFECTIVE DATE: The act is effective when it becomes law.
S. 877 1999 Leg., Regular Session (House Ways and Means Committee, June 30, 1999 minutes, second edition (N.C. 1999).
4. With respect to the rules of statutory construction, the meaning of a statute is controlled by legislative intent. Brown v. Flowe,349 N.C. 520, 507 S.E.2d 894 (1998). "To determine legislative intent, [the Commission] must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to *Page 12 
accomplish." Brown, 349 N.C. at 522, 507 S.E.2d at 895. If the language of a statute is unambiguous on its face, then we must construe the statute according to its plain meaning. Lutz v. Gaston County Bd. ofEduc., 282 N.C. 208, 192 S.E.2d 463 (1972). However, where the language of the statute is ambiguous and its meaning is unclear, legislative intent controls. Whittington v. N.C. Dep't of Human Resources,100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990).
5. The amendment to the statute clarified the language to specify that it covered more than injuries at drill, in camp, and while on special
duty under orders of the Governor. The amendment clarifies that members of both the North Carolina National Guard and the North Carolina State Guard are considered employees under the North Carolina Workers' Compensation Act while on State active (not just special) duty under orders of the Governor. It appears that the amendment clarified the intent of the legislature to make the statute more inclusive, rather than exclusive. Defendant's interpretation would preclude State workers' compensation coverage for members of the North Carolina National Guard while at camp or participating in drills even in North Carolina unless the Governor issued a special order. As stated above in its ruling on Defendant's Motion to Dismiss, the Full Commission is not persuaded that the statutory intent is as narrow as Defendant argues.
6. Plaintiff sustained a specific traumatic incident to her back, as well as to her hips, legs, and groin arising out of her employment with Defendant as a direct result of the work assigned on May 8, 2003. N.C. Gen. Stat. § 97-2(6).
7. A Plaintiff in a workers' compensation case has the burden of initially proving "each and every element of compensability," including a causal relationship between the injury and her employment. Whitfield v.Lab. Corp. of Amer., 158 N.C. App. 341, 350, 581 S.E.2d 778, *Page 13 
784 (2003). "The quantum and quality of the evidence required to establish prima facie the causal relationship will of course vary with the complexity of the injury itself." Hodgin v. Hodgin,159 N.C. App. 635, 639, 583 S.E.2d 362, 365 (2003). A Plaintiff must prove causation by a "greater weight" of the evidence. Phillips v. U.S.Air, Inc., 120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995). Here, Plaintiff has presented sufficient medical evidence to satisfy her burden of proving causation.
8. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, 177 N.C. App. 205, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). Plaintiff has produced medical evidence sufficient to prove that she was disabled from May 8, 2003, through at least, February 3, 2004. The extent of Plaintiff's disability after February 3, 2004 should be reserved for subsequent determination.
9. Plaintiff is entitled to the maximum compensation rate of $674.00 per week for her May 8, 2003, injury by accident. N.C. Gen. Stat. §97-2(5). *Page 14 
10. Plaintiff is entitled to temporary total disability compensation at a rate of $674.00 per week from May 8, 2003, through at least February 3, 2004. N.C. Gen. Stat. § 97-29.
11. Plaintiff is entitled to have Defendants provide all medical treatment necessitated by the May 8, 2003, compensable injury by accident. The medical treatment Plaintiff has received for her compensable injury by accident was reasonably required to effect a cure, provide relief, or to lessen her disability. Defendant shall further provide ongoing medical treatment at their expense for all future medical treatment required by Plaintiff related to the compensable injury by accident. N.C. Gen. Stat. § 97-25.
12. Defendant is entitled to a credit only for the $273.00 per month that Plaintiff received in pay from Defendant-Employer while attending her weekend/monthly duty for the North Carolina National Guard from the date of the injury in May 2003 through June 2004, and for earnings received when Plaintiff attempted to work at Church's Chicken.
13. Defendant is not entitled to receive a credit toward the total disability compensation owed to Plaintiff above as a result of the "incapacitation pay" Plaintiff received since those payments were actually paid with federal monies. In addition, Defendant is not entitled to receive a credit for the ongoing monthly payments received as severance pay from the Veterans' Administration of the federal government for permanent disability as these payments likewise are paid with federal monies and are not provided by Defendant-Employer.
 *********** *Page 15 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay Plaintiff, subject to the credit and the attorney fee described hereinafter, temporary total disability benefits at the weekly compensation rate of $674.00 from May 8, 2003, to February 3, 2004. Those temporary total disability benefits are due and payable and shall be paid in a lump sum.
2. Defendant is entitled to a credit only for the $273.00 per month that Plaintiff received in pay from Defendant-Employer while attending her weekend/monthly duty for the North Carolina National Guard from the date of the injury in May 2003 through November 5, 2003. Defendant's credit shall be taken from the lump sum due Plaintiff for her past due temporary total disability benefits after the attorney fee hereinafter awarded is deducted.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due Plaintiff under this Award is approved for Plaintiff's counsel and shall be paid directly to Plaintiff's counsel. Defendant shall deduct this sum from the lump sum due Plaintiff for past due disability benefits and pay the same directly to Plaintiff's counsel.
4. Defendant shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of her compensable injury by accident so long as the medical treatment tends to effect a cure or give relief or lessen Plaintiff's disability, including further evaluation from a neurosurgeon or orthopedist to determine the extent of Plaintiff's medical condition and disability.
5. The extent of Plaintiff's disability under the Workers' Compensation Act after February 3, 2004, is reserved for subsequent determination. If the parties are not able to resolve *Page 16 
this issue between themselves, either party may file a Form 33 Request for Hearing on the matter before the Industrial Commission.
6. Defendant shall pay the costs.
This the ___ day of November 2007.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1