695 S.E.2d 168 (2010)
In the Matter of J.C.
No. COA10-31.
Court of Appeals of North Carolina.
July 6, 2010.
*169 Roy Cooper, Attorney General, by Jane L. Oliver, Assistant Attorney General, for the State.
Mary McCullers Reece, Smithfield, for juvenile-appellant.
MARTIN, Chief Judge.
On 18 March 2009, a juvenile petition was filed alleging that J.C. was delinquent in that he possessed a weapon on school property in violation of N.C.G.S. § 14-269.2(d). In the petition, the weapon was described as a "steel link from chain." The juvenile moved to dismiss the proceeding on the grounds that the petition was insufficient to allege a violation of the statute because a "steel link from chain" is not a weapon as contemplated by the statute. The trial court reserved ruling until the conclusion of the evidence.
The State's evidence tended to show that while monitoring the students boarding the buses at the end of the school day on the afternoon of 25 February 2009, Brent Locklear, a school counselor at Fairgrove Middle School, observed thirteen-year-old J.C. reach into his pocket and retrieve a metallic, oval-shaped "link" through which J.C. slid several of his fingers. With the metallic link gripped in his fist and held securely across his knuckles, Mr. Locklear then observed J.C. begin to approach another student while keeping the hand carrying the metallic link down by his side. J.C. approached the other student in a manner that led Mr. Locklear to believe that J.C. was attempting to move toward the other student without being noticed. Because Mr. Locklear knew that J.C. and the student he was approaching had been in his office about a problem involving "[a] girl," after observing J.C. walk with the metallic link held securely across his knuckles for about six feet in the direction of the other student, Mr. Locklear "confronted" J.C. when he was about eight to ten feet behind the student, took the metallic link from J.C., and escorted him to the principal's office. The link was introduced into evidence; it was a C-shaped, oblong, solid metallic bar approximately three inches long on each side, one-and-a-half inches wide, and capable of being opened and closed by turning a half-inch bolt to complete the oblong-shaped closed link. The bar was made of steel, approximately three-eighths of an inch thick, and weighed approximately one pound.
At the close of the State's evidence, the juvenile renewed his motion to dismiss on the grounds that the metallic link was not a weapon as contemplated by the statute. After considering the evidence and arguments from counsel, the trial court determined that the juvenile possessed a weapon, which it described as "a steel link from a chain which is equivalent in appearance and use to metallic knuckles," on school property in violation of N.C.G.S. § 14-269.2(d), and so entered an order adjudicating J.C. delinquent. The juvenile appeals.
A juvenile petition "serves essentially the same function as an indictment in a *170 felony prosecution and is subject to the same requirement that it aver every element of a criminal offense, with sufficient specificity that the accused is clearly apprised of the conduct for which he is being charged." In re Griffin, 162 N.C.App. 487, 493, 592 S.E.2d 12, 16 (2004). Since an indictment is "fatally defective" and will "fail[ ] to evoke the jurisdiction of the court ... if it wholly fails to charge some offense ... or fails to state some essential and necessary element of the offense of which the defendant is found guilty," In re R.P.M., 172 N.C.App. 782, 787, 616 S.E.2d 627, 631 (2005) (citations and internal quotation marks omitted) (second omission in original), we must first determine whether the trial court properly concluded that the petition, which identified the metallic link as an "other weapon" described as a "steel link from chain," averred a fact necessary to support the element of the offense that J.C. possessed or carried a weapon as contemplated by N.C.G.S. § 14-269.2(d).
"`Legislative intent controls the meaning of a statute.'" Brown v. Flowe, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998) (quoting Shelton v. Morehead Mem'l Hosp., 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986)). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." Id. "First among these considerations, however, is the plain meaning of the words chosen by the legislature; if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings." Id. at 522, 507 S.E.2d at 895-96. "The Court's analysis therefore properly begins with the words themselves." Id. at 522, 507 S.E.2d at 896.
N.C.G.S. § 14-269.2(d) provides:
It shall be a Class 1 misdemeanor for any person to possess or carry, whether openly or concealed, any BB gun, stun gun, air rifle, air pistol, bowie knife, dirk, dagger, slungshot, leaded cane, switchblade knife, blackjack, metallic knuckles, razors and razor blades (except solely for personal shaving), firework, or any sharp-pointed or edged instrument except instructional supplies, unaltered nail files and clips and tools used solely for preparation of food, instruction, and maintenance, on educational property.
N.C. Gen.Stat. § 14-269.2(d) (2009) (emphasis added). While, in the same article of the General Statutes, "metallic knuckles" are recognized as a deadly weapon, see N.C. Gen.Stat. § 14-269(a) (2009) ("It shall be unlawful for any person willfully and intentionally to carry concealed about his person any. metallic knuckles ... or other deadly weapon of like kind ...." (emphasis added)), the Legislature has provided no further guidance about the characteristics it intended should be ascribed to a weapon identified as "metallic knuckles" under N.C.G.S. § 14-269.2(d).
The purpose of N.C.G.S. § 14-269.2 is "to deter students and others from bringing any type of [weapon] onto school grounds." See In re Cowley, 120 N.C.App. 274, 276, 461 S.E.2d 804, 806 (1995). The juvenile's argument is that the petition was insufficient to give the trial court jurisdiction over the matter because the petition "failed to set forth that he possessed any of the items prohibited by the cited statute." Specifically, the juvenile argues that the petition was deficient because the box for "metallic knuckles" was left unchecked, while the box for "other weapon" was checked and was accompanied by the description of a "steel link from chain."
The object which the juvenile possessed in this case consisted of a three-eighths-inch thick solid metallic bar that formed a C-shaped "link" which was about three inches in length and one-and-a-half inches in width, and closed by tightening a one-half-inch thick bolt. The object, commonly referred to as a quick link, was said to be made of solid steel and to weigh at least one pound, and was distinguished in the testimony from a similarly shaped object, known as a carabiner, which is generally made of aluminum or some other lightweight alloy and is designed to hold a freely running rope or, in modern use, as a key chain. The weighted steel link was one through which the juvenile was capable of sliding several of his fingers so that three to four inches of the three-eighths-inch thick solid steel bar could be held securely across his knuckles and used as a weapon as *171 he gripped the other half of the steel link with his fist. Thus, "because the focus of the statute [at issue] is the increased necessity for safety in our schools," see In re Cowley, 120 N.C.App. at 276, 461 S.E.2d at 806, we think it consistent with the plain language, the spirit, and the objectives of the statute that the item seized from the juvenile as described above is sufficiently equivalent to what the General Assembly intended to be recognized as "metallic knuckles" under N.C.G.S. § 14-269.2(d).
Moreover, with respect to the juvenile's argument that the weapon was described in the petition as an "other weapon" while the box for "metallic knuckles" was left unchecked, we believe this to be the type of "hyper technical scrutiny with respect to form" to which our courts have recognized an indictment or juvenile petition "should not be subjected." See In re S.R.S., 180 N.C.App. 151, 153, 636 S.E.2d 277, 280 (2006); see also id. at 154, 636 S.E.2d at 280 ("`[I]t is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.'" (alteration in original) (quoting State v. Sturdivant, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981))). Since the petition apprised the juvenile of the conduct for which he was charged and alleged sufficient facts of every element of the offense, see In re Griffin, 162 N.C.App. at 493, 592 S.E.2d at 16, we conclude the trial court had jurisdiction over the matter.
Finally, the juvenile contends, based upon the same argument advanced in support of his motion to dismiss, that the evidence was insufficient to support the court's adjudication of J.C. as delinquent because the evidence did not show that he possessed a weapon in violation of N.C.G.S. § 14-269.2(d). He argues that "[a] link of chain is no more a weapon than a protractor, a combination lock or any number of other items routinely found in students' possession at school." Since we have already determined that the steel link in his possession on school property is a weapon under N.C.G.S. § 14-269.2(d), we reject this argument as well.
Affirmed.
Judges BRYANT and ELMORE concur.