Progress Builders, LLC v. King, 2017 NCBC 40.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

PROGRESS BUILDERS, LLC,

Plaintiff,

v.

SHANNON KING,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 21379

ORDER AND OPINION ON
PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

1.   **THIS MATTER** is before the Court upon Plaintiff Progress Builders, LLC's ("Progress Builders") Motion for Summary Judgment against Defendant Shannon King ("King") in the above-captioned case.   Having considered the Motion and supporting documents, the brief in support of the Motion, appropriate matters of record, and the arguments of Plaintiff's counsel and Defendant King at a March 8, 2017 hearing on the Motion, the Court **GRANTS** the Motion as provided below.

> *Blanco, Tackabery & Matamoros, P.A., by Peter J. Juran, for Plaintiff Progress Builders, LLC.*

> *Shannon King, Pro se.*

Bledsoe, Judge.

I.

PROCEDURAL BACKGROUND

2.   Progress Builders filed the complaint in this action on November 13, 2015 against Defendants King, Martha Thomley ("Thomley"), Monarch Properties, LLC, TN DHD Ventures, LLC ("TN DHD Ventures"), ETSU Ventures, LLC, and Monarch ETSU, LLC, asserting claims for breach of contract, account stated, and unjust

enrichment to recover money it advanced in connection with a student housing project at East Tennessee State University in Johnson City, Tennessee (the "ETSU Project").

3. During the course of the litigation, Progress Builders dismissed its claims against Thomley, TN DHD Ventures, and ETSU Ventures, LLC. Progress Builders served Monarch Properties, LLC and Monarch ETSU, LLC (the "Monarch Defendants") on December 21, 2015, but the Monarch Defendants have never made an appearance in this litigation. In a related proceeding, the Court approved a settlement agreement in which the Monarch Defendants agreed not to oppose entry of default judgment against them in this case. *Thomley v. King*, No. 14 CVS 17364 ¶ 9(a)(i) (N.C. Super. Ct. Jun. 9, 2016) (order approving settlement of claim against receivership estate). Progress Builders has not yet filed a motion for entry of default and default judgment against the Monarch Defendants.

4. On December 22, 2016, Progress Builders filed its Motion for Summary Judgment against Shannon King (the "Motion"), the remaining participating defendant in this action. Progress Builders seeks entry of judgment on the two claims asserted against King—breach of contract and account stated—as well as on a theory of *quantum meruit*.

5. On March 8, 2017, this Court held a hearing on the Motion at which Progress Builders was represented by counsel, and King, who is not a lawyer and has not retained counsel in this matter, appeared *pro se*.

6. King did not file a written response to the Motion and did not offer evidence in opposition to the Motion at any time prior to the March 8 hearing. King argued in

opposition to the Motion at the hearing, but she did not offer any evidence. Following the hearing, the Court afforded King a further opportunity to submit evidence or additional argument in opposition to the Motion, but King elected not to make any post-hearing submission of either evidence or argument.

7. Counsel for Progress Builders advised the Court at the hearing that Progress Builders had received $10,000 from Defendant TN DHD Ventures in connection with the voluntary dismissal of claims against that entity. Counsel for Progress Builders also announced to the Court that Progress Builders withdrew its Motion to the extent the Motion sought judgment on a purported claim for *quantum meruit* because such a claim had not been asserted against King in the complaint and because Progress Builders did not wish to seek to amend the pleadings at this stage of the litigation.

8. The time for briefing, arguments, and further submissions has now passed, and the Motion is ripe for resolution.

## II.

## FACTUAL BACKGROUND

9. While findings of fact are not necessary or proper on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62, 693 S.E.2d 250, 252 (2010) (quotations and citation omitted). Therefore, this Court limits its factual

recitation to the undisputed material facts necessary to decide the Motion, and not to resolve issues of material fact.

10. Progress Builders is a limited liability company organized under South Carolina law. It is licensed as a general contractor and permitted to do business in North Carolina. (Queener Aff. ¶ 1.)

11. King and her former business partner, Thomley, were members and operators of several entities involved in real estate development, including non-party Monarch Ventures, LLC ("Monarch Ventures").

12. On September 2, 2011, Monarch Ventures and some of Progress Builders's affiliates entered into a Letter of Intent, which proposed a joint venture in which Progress Builders would have options to develop multifamily student housing in various communities with Monarch Ventures. (Compl. Ex. A.)

13. In February 2012, King proceeded with the ETSU Project without involving Progress Builders. (Queener Aff. ¶ 4.) When the project faced funding challenges, King approached Progress Builders about advancing her and Monarch Ventures the costs of predevelopment and preconstruction. (Queener Aff. ¶ 4.) Progress Builders agreed. (Queener Aff. ¶ 5.) Thereafter, Progress Builders paid $50,000 to Monarch Ventures, and, in exchange, Monarch Ventures, King, and Thomley executed an Assignment of Purchase Contract in favor of Progress Builders. (Compl. Ex. B.)

14. The parties later agreed to treat the Assignment of Purchase Contract and the $50,000 payment as a loan to be repaid by Monarch Ventures, King, and Thomley, jointly and severally, rather than treating the contract as an assignment of rights.

(Queener Aff. ¶ 6.) King then requested a series of additional loans and advances for the ETSU Project, which Progress Builders agreed to supply. (Queener Aff. ¶ 7.) King repeatedly made personal assurances to Progress Builders of her intent to repay the loans, and Progress Builders relied on her assurances when it decided to make these additional loans. (Queener Aff. ¶ 7.)

15. Between March and August 2012, Progress Builders loaned a total of $103,040.04, including the initial $50,000 payment, to fund the ETSU Project. (Queener Aff. Ex. C.) These loans were extended to cover a land acquisition deposit, engineering and architectural fees, and other predevelopment and preconstruction related costs. (Queener Aff. ¶ 8.) On March 1, 2013, Progress Builders invoiced Monarch Ventures for $111,236.66, reflecting principal plus interest through that date. (Queener Aff. Ex. C.)

16. Less than a week after receiving the invoice, King sent an email to Progress Builders's president, among others, stating:

> If you want to be paid for what you have spent at ETSU I need original receipts. I need these by Friday, March 8th of this week. I have asked multiple times because I want to reimburse you. I will not be able to do that without the original docs [sic].

(Queener Aff. Ex. D.) Progress Builders responded the same day, attaching supporting documents to its invoice. (Queener Aff. Ex. E.)

17. After receiving the supporting documents, King renewed her promise to repay Progress Builders, and she promised that the repayment would occur no later than December 31, 2013, upon the closing of the construction loan. (Queener Aff. ¶ 11.) King made these promises to Progress Builders multiple times. (Queener Aff.

¶ 11.) Though the construction loan closed, no payment was ever made on Progress Builders's outstanding loans until TN DHD Ventures's settlement payment in 2017. (Queener Aff. ¶ 11.)

18.    On June 16, 2014, King informed Progress Builders that she had requested the funds for repayment by a draw and that Progress Builders should receive repayment by the end of that month. (Queener Aff. Ex. F.) When the month ended without any payment, one of Progress Builders's principals emailed King once more and said, "We will give you until July 16th – which is one month from the date in which you said you submitted for payment via the draw[.] . . . After that we will avail ourselves of all means necessary to recoup our funds." (Queener Aff. Ex. F.) Progress Builders never received any payment from King on the sums Progress Builders advanced. (Queener Aff. ¶ 12.) The only repayment of any kind that Progress Builders has received on its loans to King, Thomley, and Monarch Ventures is the $10,000 paid by TN DHD Ventures in settlement of the claims against it in this litigation.

III.

LEGAL STANDARD

19.    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (quoting N.C. R. Civ. P.

56(c)).  A genuine issue is one "supported by substantial evidence" and "an issue is material if the facts alleged would constitute a legal defense."  *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citations omitted).

20.    "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial."  *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000).  When a motion for summary judgment is properly supported, the "adverse party may not rest upon the mere allegations or denials of [her] pleading, but [her] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  N.C. R. Civ. P. 56(e).  "If [she] does not so respond, summary judgment, if appropriate, shall be entered against [her]."  *Id.*  In addition, under the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), where, as here, an adverse party "fails to file a response [in opposition to a motion] within the time required by this rule, the motion will be considered and decided as an uncontested motion."  BCR 7.6 (2017).

IV.

ANALYSIS

A.  Breach of Contract

21.    To succeed on its breach of contract claim, Progress Builders must prove that a contract existed between the parties and that there was a breach of the terms

of that contract. *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson v. California Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)).

22. Progress Builders has satisfied the first element of its claim by offering evidence of an initial oral contract with King, Thomley, and Monarch Ventures to treat the opening $50,000 advance under the Assignment of Purchase Contract as a loan. (Queener Aff. ¶ 6.) Progress Builders then made additional loans, each in exchange for an oral promise from King, Thomley, and Monarch Ventures, jointly and severally, to pay back all indebtedness. (Queener Aff. ¶ 7.) Absent any evidence from King, the Court concludes that there is no genuine issue of material fact as to contract formation in these circumstances and that Progress Builders has established as a matter of law that it advanced funds, which King agreed to repay, with interest through March 1, 2013, in the total amount of $111,236.66.

23. Progress Builders has also satisfied the second element of a breach of contract claim. "Non-performance of a valid contract is a breach thereof . . . unless the person charged shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon [her]." *Sechrest v. Forest Furniture Co.*, 264 N.C. 216, 217, 141 S.E.2d 292, 294 (1965) (quoting *Blount-Midyette & Co. v. Aeroglide Corp.*, 254 N.C. 484, 119 S.E.2d 225 (1961)). The contracts at issue required the repayment of Progress Builders's loans, and King made no repayment. (Queener Aff. ¶ 12.) King has offered no evidence to support her contention at the hearing that her obligation to repay the indebtedness should be excused. Therefore, the Court

concludes that there is no genuine issue of material fact as to King's breach of her contracts with Progress Builders, that Progress Builders has established as a matter of law that King breached her contracts with Progress Builders, and that Progress Builders is entitled to judgment on its breach of contract claim.

B. Account Stated

24.    "An account becomes stated and binding on both parties if after examination the part[y] sought to be charged unqualifiedly approves of it and expresses [her] intention to pay it." *Little v. Shores*, 220 N.C. 429, 431, 17 S.E.2d 503, 504 (1941) (citation omitted).  In other words, "[a]n account stated is by nature a new contract to pay the amount due based on the acceptance of or failure to object to an account rendered." *Carroll v. McNeill Indus., Inc.*, 296 N.C. 205, 209, 250 S.E.2d 60, 62 (1978) (citation omitted).  Thus, a claim for account stated has four elements:  "(1) a calculation of the balance due; (2) submission of a statement to [the opposing party]; (3) acknowledgment of the correctness of that statement by [the opposing party]; and (4) a promise, express or implied, by [the opposing party] to pay the balance due." *Id.*

25.    Here, Progress Builders submitted an itemized invoice to King on March 1, 2013, (Queener Aff. Ex. C), and resubmitted the invoice with detailed receipts on March 7, 2013, (Queener Aff. Ex. E), satisfying the first two elements of the claim. "The jury may infer from the retention without objection of an account rendered for a reasonable time by the person receiving a statement of account that the person receiving the statement has agreed that the account is correct." *Mahaffey v. Sodero*, 38 N.C. App. 349, 351, 247 S.E.2d 772, 774 (1978).  Thus, King's failure to object to

the invoice is sufficient evidence to satisfy the third element of the claim. Finally, King made repeated express promises to pay the balance due, first on December 13, 2013, and then on June 16, 2014, which satisfies the final element of the claim. (Queener Aff. ¶¶ 11–12, Ex. F.)

26. King has offered no evidence challenging Progress Builders's Motion on this claim. Thus, the Court concludes that Progress Builders has demonstrated that there is no genuine issue of material fact as to each element of the account stated claim and that Progress Builders is therefore entitled to summary judgment.

C. Damages

27. Under North Carolina law, "in an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." N.C. Gen. Stat. § 24-5(a). Progress Builders has offered evidence that it had numerous conversations with King about when she would repay the $111,236.66 she acknowledged was due and owing. Progress Builders explicitly informed King that it would accept payment in full satisfaction of the claim until July 16, 2014, (Queener Aff. Ex. F), and it appears from the undisputed record that Progress Builders did not consider the obligation finally due and owing until that time. Relying on the undisputed evidence of record, the Court will award prejudgment interest from July 17, 2014.

28. Progress Builders stated on the record at the March 8 hearing that it had received $10,000 from TN DHD Ventures in connection with the dismissal of its claims against that entity. "[A]ny amount paid by anybody, whether they be joint

tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the total recovery in any action for the same injury or damage." *Holland v. S. Pub. Utils. Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593–94 (1935). This principle is "well established at common law." *Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 416, 363 S.E.2d 643, 652 (1988) (citing *Holland*, 208 N.C. at 291, 180 S.E. at 593). Thus, King is entitled to a credit against the judgment in the amount of $10,000.

29. Our Supreme Court has set forth a formula to calculate prejudgment interest when the plaintiff has previously received a settlement payment from a co-defendant for the same damage. *Brown v. Flowe*, 349 N.C. 520, 526, 507 S.E.2d 894, 898 (1998). To calculate the damages owed in such a scenario the trial court must:

> (1) add[] prejudgment interest at the legal rate to the entire [portion of the award bearing prejudgment interest under N.C. Gen. Stat. § 24-5], (2) add[] interest at the legal rate to the settlement sum from the date of settlement until the date of judgment, and (3) subtract[] the second calculation from the first to determine the amount of compensatory damages defendant owes to plaintiff.

*Id.* at 527, 507 S.E.2d at 898. This method "effectively, accurately, and fairly reduce[s] the 'claim' against the nonsettling" defendant by considering "the changing value of that claim over time." *Id.* at 526, 507 S.E.2d at 898.

30. The Supreme Court's decision in *Brown* dealt with prejudgment interest awarded under a different subpart of the prejudgment interest statute, N.C. Gen. Stat. § 24-5(b). This Court nevertheless finds *Brown* equally applicable to awards for breach of contract bearing prejudgment interest under section § 24-5(a) because the

Supreme Court articulated the formula in *Brown* to give effect to the intent of section 24-5 as a whole, which seeks "(1) to compensate plaintiffs for loss of the use of their money, (2) to prevent unjust enrichment by the defendant by having money [she] should not have, and (3) to promote settlement." *Brown*, 349 N.C. at 524, 507 S.E.2d at 896.[1]

31.    The Court therefore calculates Progress Builders's judgment as follows. First, Progress Builders is entitled to prejudgment interest at the legal rate of interest at 8% on the $111,236.66 contract damages for the period commencing on July 17, 2014 and concluding with the entry of this Order and Opinion on May 3, 2017.  This amount is $136,129.29.  Next, the Court adds 8% interest to the $10,000 settlement sum from the date of settlement.  In the absence of evidence as to the specific date that Progress Builders received the settlement amount, the Court considers it reasonable to use the date on which Progress Builders dismissed TN DHD Ventures because it is unlikely that the TN DHD Ventures would have paid Progress Builders without requiring Progress Builders to file a prompt dismissal upon payment.  Progress Builders dismissed TN DHD Ventures on January 10, 2017. Therefore, the settlement with interest is $10,247.67.  Subtracting this amount from the total contract damages of $136,129.29, the Court determines that Progress Builders is entitled to a judgment against King of $125,881.62.

---

[1]  N.C. Gen. Stat. § 24-5(a) is distinct from the other subparts of the statute because it allows for prejudgment interest to be calculated at a rate other than the legal rate if the contract at issue so provides.  Thus, the *Brown* formula may be different in a case where prejudgment interest is awarded at a contract rate rather than the legal rate.  In this case, there is no evidence or argument that prejudgment interest should not be calculated at the legal rate, and so the Court need not modify the *Brown* formula.

V.

CONCLUSION

32. Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion and enters summary judgment against King on Progress Builders's claims for breach of contract and for account stated.

33. The Court's entry of summary judgment against King disposes of all claims that have been asserted against her in this litigation.

34. Progress Builders shall have and recover from King the principal sum of $125,881.62, plus post-judgment interest at the legal rate.

**SO ORDERED**, this the 3rd day of May, 2017.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases