IN THE SUPREME COURT OF NORTH CAROLINA

No. 385PA13

DOUGLAS KIRK LUNSFORD

v.

THOMAS E. MILLS, JAMES W. CROWDER, III, and SHAWN T. BUCHANAN

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 747 S.E.2d 390 (2013), affirming an order of summary judgment entered on 13 November 2012 by Judge James U. Downs in Superior Court, McDowell County. Heard in the Supreme Court on 15 April 2014.

*Abrams & Abrams, P.A., by Noah B. Abrams, Douglas B. Abrams, Margaret S. Abrams, and Melissa N. Abrams, for plaintiff-appellee.*

*Nelson Levine de Luca & Hamilton, by David L. Brown, Brady A. Yntema, and David G. Harris, II, for unnamed defendant-appellant North Carolina Farm Bureau Mutual Insurance Company.*

*White & Stradley, PLLC, by J. David Stradley; and Whitley Law Firm, by Ann C. Ochsner, for North Carolina Advocates for Justice, amicus curiae.*

*Sparkman Larcade, PLLC, by George L. Simpson, IV, for North Carolina Association of Defense Attorneys and Property Casualty Insurers Association of America, amici curiae.*

BEASLEY, Justice.

The primary issue in this appeal is whether an insured may, in a situation in which there is more than one at-fault driver responsible for the accident causing the insured's injuries, recover under his or her underinsured motorist (UIM) policy

before exhausting the liability insurance policies of all the at-fault drivers. We conclude that the insured is only required to exhaust the liability insurance coverage of a single at-fault motorist in order to trigger the insurer's obligation to provide UIM benefits. Accordingly, we affirm the Court of Appeals' decision on this issue. Because, however, the trial court's award of interest and costs against the insurer in this case exceeds the amount the insurer contractually promised to pay under the terms of its policy with the insured, the Court of Appeals erred in upholding that portion of the award. In this respect, we reverse the Court of Appeals.

Facts

The parties to this appeal have stipulated to the material facts, which tend to establish that on 18 September 2009, defendant Thomas E. Mills was operating a tractor-trailer owned by his employer, defendant James W. Crowder, III. Mills was traveling eastbound on Interstate Highway 40 in McDowell County when he lost control while rounding a curve, causing his vehicle to collide with the concrete median barrier and flip. Plaintiff Douglas Kirk Lunsford, a volunteer firefighter, responded first to the scene and found that Mills was injured and that diesel fuel was leaking from the tractor-trailer. Lunsford, who was standing in the highway median, attempted to lift Mills over the concrete divider so that he could carry Mills to safety and assess his injuries. As Lunsford was doing so, defendant Shawn T. Buchanan was driving westbound on Interstate Highway 40. When the vehicle in

front of Buchanan slowed down because of the tractor-trailer accident, Buchanan swerved to the left to avoid the vehicle and struck Lunsford. Lunsford was dragged underneath Buchanan's car and suffered severe injuries, including multiple broken bones, lacerations, and internal injuries.

At the time of the accidents, Mills and Crowder were insured through Crowder's business motor vehicle policy with United States Fire Insurance Company (U.S. Fire), which provided a liability coverage limit of $1 million. The second driver, Buchanan, was insured under a policy written by Allstate Insurance Company (Allstate), providing liability coverage of $50,000. Lunsford maintained two policies with unnamed defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau): (1) a business policy with UIM coverage of $300,000; and (2) a personal policy with UIM coverage of $100,000.

Lunsford subsequently filed a negligence action against Mills, Crowder, and Buchanan (named defendants), claiming that they were jointly and severally liable for his injuries. All named defendants filed answers, which included crossclaims for indemnification and contribution. Farm Bureau, as an unnamed defendant, also filed an answer in which it claimed that it would be entitled to an offset with respect to Lunsford's UIM policies for any damages he recovered through the insurance policies held by the named defendants.

On 24 May 2011, Allstate tendered to Lunsford the $50,000 liability coverage limit for Buchanan's policy. Lunsford's attorney notified Farm Bureau the next day of Allstate's tender and demanded that Farm Bureau tender payment on Lunsford's UIM claim. In a letter dated 7 June 2011, Farm Bureau indicated that (1) it would not advance the liability policy limits tendered to Lunsford by Allstate; and (2) it would review its legal options regarding Lunsford's UIM claim and respond "at a later date." On 15 November 2011, Lunsford's attorney informed Farm Bureau that Lunsford had tentatively settled his claims against Mills and Crowder for $850,000, which was to be paid through Crowder's policy with U.S. Fire. At the time of these settlements, Farm Bureau had not provided UIM coverage to Lunsford.

On 12 January 2012, the trial court entered an order approving the settlement agreements. On 19 July 2012, Farm Bureau filed a motion for summary judgment on Lunsford's UIM claim, arguing that he was not entitled to UIM coverage because the total amount of his settlements with Buchanan, Mills, and Crowder ($50,000 + $850,000 = $900,000) exceeded the aggregate amount of Lunsford's UIM policies ($300,000 + $100,000 = $400,000). Lunsford also moved for summary judgment, maintaining that his UIM policies stacked and that he was entitled to recover $350,000 from Farm Bureau—the amount of his aggregated UIM coverage limit ($400,000) minus the $50,000 he recovered through his settlement with Buchanan.

After conducting a hearing on the parties' motions, the trial court entered an order on 13 November 2012 granting summary judgment in favor of Lunsford. The trial court accordingly ordered Farm Bureau to pay Lunsford $350,000, plus costs and pre- and post-judgment interest "as provided by law."

Farm Bureau appealed the trial court's order to the Court of Appeals, primarily arguing that the trial court erred in granting summary judgment in favor of Lunsford and ordering Farm Bureau to pay $350,000 in UIM coverage because, under the statute governing UIM coverage, Farm Bureau "was not required to provide coverage until all applicable policies—meaning all policies held by all the named Defendants—had been exhausted." *Lunsford v. Mills*, ___ N.C. App. ___, ___, 747 S.E.2d 390, 393 (2013). The court disagreed based on its reading of the UIM statute: " 'Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of *the underinsured highway vehicle* have been exhausted.' " *Id.* at ___, 747 S.E.2d at 393 (quoting N.C.G.S. § 20-279.21(b)(4) (emphasis added by court)). The court interpreted this language "to mean that UIM coverage is triggered the moment that an insured has recovered under all policies applicable to '*a*'—meaning *one*—'underinsured highway vehicle' involved in a motor vehicle accident resulting in injury to the insured." *Id.* at ___, 747 S.E.2d at 393 (emphasis added).

Noting that the issue of when UIM coverage is triggered in situations involving multiple potential at-fault drivers is one of first impression in North Carolina, the Court of Appeals believed that its interpretation of the UIM statute was consistent with that court's precedent suggesting that "insureds should [not] 'be kept hanging in limbo as they are forced to sue any and all possible persons . . . before they could recover UIM benefits' just because other potential tortfeasors also happen to be covered under automobile policies." *Id.* at ___, 747 S.E.2d at 394 (quoting *Farm Bureau Ins. Co. of N.C. v. Blong*, 159 N.C. App. 365, 373, 583 S.E.2d 307, 312, *disc. rev. denied*, 357 N.C. 578, 589 S.E.2d 125 (2003)). In light of this rationale, the court determined that, in such a situation, UIM carriers are obligated "to first provide coverage, and later seek an offset through reimbursement or exercise of subrogation rights." *Id.* at ___, 747 S.E.2d at 394. Consequently, the court determined that upon the exhaustion of "all policies applicable to Mr. Buchanan's vehicle," Lunsford's "UIM coverage was triggered," and "Farm Bureau was not at liberty to withhold coverage until [Lunsford] reached settlement agreements with Mr. Mills and Mr. Crowder." *Id.* at ___, 747 S.E.2d at 394.

Farm Bureau alternatively argued that, even it were required to provide UIM coverage, the trial court nevertheless erred in ordering it to pay pre- and post-judgment interest and costs. In support of this contention, Farm Bureau cited our decision in *Sproles v. Greene*, 329 N.C. 603, 613, 407 S.E.2d 497, 503 (1991), in which we concluded that North Carolina's compulsory motor vehicle insurance laws

do not impose an obligation on liability insurers to pay interest on a judgment in excess of the insurer's policy limits, but rather, such an obligation "is governed by the terms of the [insurance] policy." The Court of Appeals believed that *Sproles* was distinguishable on the ground that *Sproles* held that a "UIM carrier is not required to pay pre and post-judgment interest *on behalf of the insured* where the judgment has been entered *against the insured.*" *Lunsford*, ___ N.C. App. at ___, 747 S.E.2d at 395 (citing *Sproles*, 329 N.C. at 605, 407 S.E.2d at 498). Here, in contrast, "the judgment was entered against Farm Bureau itself, not against its insured (Plaintiff)." *Id.* at ___, 747 S.E.2d at 395. Thus the court concluded that *Sproles* "ha[d] no bearing on the case at hand" and upheld the trial court's award of interest and costs. *Id.* at ___, 747 S.E.2d at 395 (2013).

Farm Bureau petitioned this Court for discretionary review of the Court of Appeals' decision regarding both the UIM coverage and the judgment interest issues. We allowed Farm Bureau's petition with respect to both questions. 367 N.C. 259, 749 S.E.2d 843 (2013).

Standard of Review

Under Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment is appropriate when the record establishes that there are no genuine issues of material fact and that any party is entitled to judgment as a matter of law. N.C. R. Civ. P. 56(c); *e.g.*, *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Here the parties have stipulated to the material facts, and therefore, the

only question for our consideration is whether either party is entitled to judgment as a matter of law. Answering this question primarily involves interpretation of the Motor Vehicle Safety and Financial Responsibility Act of 1953 (commonly referred to as the "FRA"), N.C.G.S. §§ 20-279.1 through -279.39 (2013), and examination of the terms of Farm Bureau's motor vehicle insurance policy, each a question of law. *See Brown v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998) ("A question of statutory interpretation is ultimately a question of law for the courts."); *Wachovia Bank & Trust v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (observing that the interpretation of "the language used in [a] policy of insurance" is "a question of law"). This Court reviews questions of law de novo, meaning that we consider the matter anew and freely substitute our judgment for the judgment of the lower court. *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citation omitted).

<u>Underinsured Motorist Coverage</u>

The parties' principal dispute centers on the proper interpretation of subdivision 20-279.21(b)(4), the FRA's provision governing UIM coverage. The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). "If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Hyler v. GTE Prods. Co.*,

333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993) (citations omitted), *superseded in part by statute*, Workers' Compensation Reform Act of 1994, ch. 679, sec. 2.5, 1993 N.C. Sess. Laws 394, 399-400, *as recognized in N.C. Ins. Guar. Ass'n v. Bd. of Trs.*, 364 N.C. 102, 691 S.E.2d 694 (2010). Thus, in effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used. *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009); *accord In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) ("[C]ourts must give [a clear and unambiguous] statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.").

The first paragraph of subdivision 20-279.21(b)(4) defines the term "underinsured highway vehicle" as

> a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C.G.S. § 20-279.21(b)(4). The statute further sets out when UIM coverage is triggered:

> Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been

exhausted.

*Id*. ("triggering provision").

Farm Bureau reads the reference to "all bodily injury liability bonds and insurance policies *applicable at the time of the accident*" in the definition of an underinsured highway vehicle to mean that, in determining whether UIM coverage is triggered, the insured's UIM coverage limit must be compared to the sum of all of the liability limits of all the at-fault motorists. Thus, according to Farm Bureau, as a prerequisite to receiving UIM benefits, Lunsford was required to exhaust not only Buchanan's liability limits, but also the policy limits of Mills and Crowder to the extent that they are liable as joint tortfeasors. We read subdivision 20-279.21(b)(4) differently.

As an initial matter, the reference to "all bodily injury liability bonds and insurance policies applicable at the time of the accident" is found in the UIM statute's definition of an "underinsured highway vehicle," not in the triggering provision. The location of the clause in a separate and distinct provision of the UIM statute indicates that the clause relates solely to an underinsured highway vehicle and not, as Farm Bureau suggests, to all the vehicles involved in an accident. *See Colonial Penn Ins. Co. v. Salti*, 84 A.D.2d 350, 352, 446 N.Y.S.2d 77, 79 (N.Y. App. Div. 1982) ("[T]he [UIM] endorsement affords coverage for bodily injury arising out of the use of an underinsured highway vehicle and the clause '*the limits of liability*

*under all bodily injury liability bonds or insurance policies applicable at the time of the accident'* . . . should be read to relate . . . to [the underinsured] vehicle only, and not, as [the insurer] contends, to the total number of vehicles involved in the accident." (emphasis added)).

An examination of the actual language of the triggering provision further undermines Farm Bureau's reading of the statute to provide that UIM coverage is not triggered until "**all** liability limits applicable 'at the time of the accident' " are exhausted. The plain language of the triggering provision identifies the liability bonds and insurance policies relevant to determining whether UIM coverage is triggered as those bonds and policies relating to "the ownership, maintenance, or use of *the* underinsured highway vehicle." N.C.G.S. § 20-279.21(b)(4) (emphasis added). A statute's use of the definite article—"the"—indicates that the legislature intended the term modified to have a singular referent. *See Renz v. Grey Adver., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997) ("Placing the article 'the' in front of a word connotes the singularity of the word modified."); *see also Gen. Accident Ins. Co. v. Wheeler*, 221 Conn. 206, 211, 603 A.2d 385, 387 (1992) (concluding, under an insurance regulation providing that "the 'insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from *the* owner or operator of *an* uninsured [or underinsured] motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured [or underinsured] motor vehicle,' " that an insured is

required to exhaust "the insurance coverage of only one tortfeasor" in order to recover UIM benefits (brackets in original)).

Farm Bureau's interpretation effectively rewrites the triggering provision to provide that UIM coverage applies only once *all* liability bonds or insurance policies providing coverage for *any* party potentially liable for the insured's bodily injuries have been exhausted. But that is not what the statute says. The plain language of the triggering provision establishes that when an insured suffers bodily injury caused by the ownership, maintenance, or use of *an* underinsured highway vehicle, and when the liability bonds or insurance policies providing coverage for *that vehicle* have been exhausted, UIM coverage is triggered. Accordingly, a UIM carrier's statutory obligation to provide UIM benefits is triggered when the insurer of a single vehicle meeting the definition of an underinsured highway vehicle tenders its liability limits to the UIM claimant through an offer of settlement or in satisfaction of a judgment. *See Register v. White*, 358 N.C. 691, 698, 599 S.E.2d 549, 555 (2004) ("Exhaustion occurs when the liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment.").

Farm Bureau contends, however, that this interpretation of subdivision 20-279.21(b)(4) has been "expressly rejected by the legislature." In support of this argument, Farm Bureau points to the General Assembly's consideration and ultimate rejection of a bill proposed in the 1983 legislative session that was

designed "to clarify the law concerning UIM coverage." The proposed bill would have completely repealed subdivision 20-279.21(b)(4), the FRA's provision governing UIM coverage, and amended subdivision 20-279.21(b)(3), the provision governing uninsured motorist coverage, so that an underinsured motor vehicle would have constituted an "uninsured motor vehicle" to the extent of "the difference between the limits of the bodily injury liability insurance and property damage liability insurance coverages on *such motor vehicle* and the limits of the uninsured motorist coverage provided under the insured's motor vehicle liability insurance policy." H. 60, 135th Gen. Assemb., Reg. Sess. (N.C. 1983) (emphasis added).

The fact that this proposed bill was not enacted is unavailing. When, as here, "the language of a statute expresses the legislative intent in clear and unambiguous terms, the words employed must be taken as the final expression of the meaning intended unaffected by its legislative history." *Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 161, 123 S.E.2d 582, 586 (1962) (citations omitted); *accord Wake Cares, Inc. v. Wake Cnty Bd. of Educ.*, 190 N.C. App. 1, 25, 660 S.E.2d 217, 232 (2008) (explaining that "[l]egislative history cannot . . . be relied upon to force a construction on [a] statute inconsistent with the plain language"), *aff'd*, 363 N.C. 165, 675 S.E.2d 345 (2009).

Farm Bureau's construction of the UIM statute also undermines the statute's purpose. Section 20-279.21 "was passed to address circumstances where ' "the

tortfeasor has insurance, but his [or her] coverage is in an amount insufficient to compensate the injured party for his [or her] full damages." ' " *Progressive Am. Ins. Co. v. Vasquez*, 350 N.C. 386, 390, 515 S.E.2d 8, 10-11 (1999) (first alteration in original) (quoting *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 189, 420 S.E.2d 124, 127 (1992), *superseded by statute*, Act of July 12, 1991, ch. 646, secs. 1, 2, 1991 N.C. Sess. Laws 1550, 1559). We have recognized the remedial nature of subdivision 20-279.21(b)(4) and explained that the statute should be "liberally construed" in order to accomplish its purpose of "protect[ing] . . . innocent victims who may be injured by financially irresponsible motorists." *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 224-25, 376 S.E.2d 761, 763 (1989). To that end, subdivision 20-279.21(b)(4)—as well as the FRA as a whole—should be "interpreted to provide the innocent victim with the fullest possible protection." *Id.* at 225, 376 S.E.2d at 764.

If Farm Bureau's interpretation were adopted, insureds would be required to pursue all claims, including weak, tenuous ones, against all potentially liable parties, no matter how impractical, before being eligible to collect their contracted-for UIM benefits. Placing this burden on insureds—who, like Lunsford, commonly suffer serious injuries and need prompt payment of benefits to pay medical expenses and other costs—would substantially delay the recovery of UIM benefits and promote litigation expenses that reduce insureds' overall recovery. *See Wheeler*, 221 Conn. at 213, 603 A.2d at 388 (observing that if the insured is not

permitted to recover UIM benefits until exhausting all liability limits of all joint

tortfeasors, "the insured could be required to pursue claims of weak liability

against third parties, thereby fostering marginal and costly litigation in our

courts"). Because Farm Bureau's interpretation of subdivision 20-279.21(b)(4)

would fail to provide innocent victims "the fullest possible protection," we reject

Farm Bureau's proposed construction. *See Proctor*, 324 N.C. at 225-26, 376 S.E.2d

at 764 (rejecting insurer's construction of subdivision 20-279.21(b)(4) that

"result[ed] in the least possible protection for the innocent victim of an

underinsured tortfeasor" and thus "undermine[d] the intent and purpose of the

statute").

Our conclusion that an insured may recover UIM benefits upon exhausting

the liability limits of a single at-fault motorist is further buttressed by examining

the subrogation provision of section 20-279.21. *See Faizan v. Grain Dealers Mut.*

*Ins. Co.*, 254 N.C. 47, 53, 118 S.E.2d 303, 307 (1961) (construing provisions of the

FRA *in pari materia*). The third paragraph of subdivision 20-279.21(b)(4) states in

pertinent part:

> An underinsured motorist insurer may at its
> option, upon a claim pursuant to underinsured motorist
> coverage, pay moneys without there having first been an
> exhaustion of the liability insurance policy covering the
> ownership, use, and maintenance of the underinsured
> highway vehicle. In the event of payment, the
> underinsured motorist insurer shall be either: (a) entitled
> to receive by assignment from the claimant any right or
> (b) subrogated to the claimant's right regarding any claim

the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, provided that the amount of the insurer's right by subrogation or assignment shall not exceed payments made to the claimant by the insurer.

N.C.G.S. § 20-279.21(b)(4); *see also id.* § 20-279.21(b)(3) (providing an insurer a right to reimbursement from settlement proceeds to the extent the insurer has made a "payment to any person under the coverage required by this section and subject to the terms and conditions of coverage").

If, as Farm Bureau argues, insureds were required to exhaust the liability policies of all at-fault motorists as a prerequisite to recovering UIM coverage, there would be no need to provide UIM carriers subrogation or reimbursement rights, and consequently, these provisions would be rendered meaningless. *See Leslie v. W.H. Transp. Co.*, 338 F. Supp. 2d 684, 689 (S.D. W. Va. 2004) ("The reservation of a subrogation right indicates that [the insurer] foresees situations in which an insured receives UIM benefits and [the insurer] then pursues a claim against a tortfeasor who is legally liable for the damages suffered by the insured. If the insured were required to exhaust every tortfeasor's policy limit before receiving UIM benefits, it is hard to imagine a UIM scenario in which subrogation rights would arise."). Yet it is a fundamental principle of statutory interpretation that courts should "evaluate [a] statute as a whole and . . . not construe an individual section in a manner that renders another provision of the same statute meaningless." *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290

(1998) (citation omitted), *cert. denied*, 526 U.S. 1098, 119 S. Ct. 1576, 143 L. Ed. 2d

671 (1999), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 353 N.C. 659, 548

S.E.2d 513 (2001).

Moreover, given the General Assembly's provision of subrogation and

reimbursement rights for the financial protection of insurers, we cannot agree with

Farm Bureau's argument that the trial court's order resulted in a "windfall" for

Lunsford. Farm Bureau could have preserved its subrogation rights by advancing

its UIM policy limits. *See State Farm Mut. Auto. Ins. Co. v. Blackwelder*, 332 N.C.

135, 138-39, 418 S.E.2d 229, 231 (1992) (concluding that the insurer of the injured

party's vehicle had "preserved its subrogation rights" against the estate of the

deceased tortfeasor by advancing the deceased tortfeasor's liability limits to its

insured and by advancing an additional amount to settle its insured's UIM claim).

Had Farm Bureau elected to do so, it would have been entitled to recoup the

advanced funds from the proceeds of the settlements with Mills and Crowder.[1]

---

[1] Farm Bureau further contends that Lunsford's recovery of an amount greater than his contracted-for UIM coverage limit is inconsistent with the purpose of the UIM statute, as articulated by the Court of Appeals in *Nationwide Mutual Insurance Co. v. Haight*, 152 N.C. App. 137, 566 S.E.2d 835 (2002), *disc. rev. denied*, 356 N.C. 675, 577 S.E.2d 627 (2003), in which the court stated: "UIM coverage is intended to place a policy holder in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the . . . UIM coverage." *Id.* at 142, 566 S.E.2d at 838 (citations, emphasis, and quotation marks omitted). We perceive no inherent conflict between *Haight*'s articulation of the intended purpose of the UIM statute and the principle we reaffirmed in *Proctor* that subdivision 20-279.21(b)(4), as a remedial statute, must be "interpreted to provide the innocent victim with the fullest possible protection." *Proctor*, 324 N.C. at 225, 376 S.E.2d at 764. Even if, as we have held, a UIM carrier is required to

N.C.G.S. § 20-279.21(b)(3). But by not advancing its policy limits, Farm Bureau waived its subrogation rights. *See* N.C.G.S. § 20-279.21(b)(4) (prohibiting insurers from exercising any right of subrogation when "the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days" of receiving written notice of the proposed settlement).

In sum, we believe that the structure and plain language of subdivision 20-279.21(b)(4), the purpose behind the UIM statute, and the legislature's inclusion of subrogation rights for insurers, compel the conclusion that UIM coverage is triggered upon the exhaustion of the policy limits of a single at-fault motorist. Accordingly, upon Allstate's tender of its policy limit of $50,000 on behalf of Buchanan, UIM coverage was triggered under subdivision 20-279.21(b)(4), and Lunsford was entitled to recover UIM benefits according to the terms of his policy with Farm Bureau. We therefore affirm the Court of Appeals' decision on this issue.

Judgment Interest and Costs

Farm Bureau also challenges the Court of Appeals' determination that Lunsford is entitled to pre- and post-judgment interest and costs. Farm Bureau contends that the award of these damages, taxed in excess of Lunsford's UIM

---

provide UIM coverage upon exhaustion of the liability limits of a single tortfeasor, the carrier may still seek recovery of any overpayment through the exercise of its rights to subrogation or reimbursement. Through these mechanisms, insurers are able to recoup any overpayment and insureds are divested of any so-called "windfall."

coverage limits, conflicts with our decision in *Baxley v. Nationwide Mutual Insurance Co.,* 334 N.C. 1, 430 S.E.2d 895 (1993). We agree.

We have established that "when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute prevail." *Id.* at 6, 430 S.E.2d at 898 (citing *Sutton v. Aetna Cas. & Surety Co.,* 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989)). Section 20-279.21 is silent with respect to pre- and post-judgment interest, and thus subsection 24-5(b), the statute governing judgment interest, "is not a part of the Financial Responsibility Act so as to be written into every liability policy." *Id.* (citing *Sproles*, 329 N.C. at 613, 407 S.E.2d at 503). When, as here, no statutory provision dictates a liability insurer's obligation to pay interest in excess of its policy limits, such an obligation "is governed by the language of the policy." *Id.* (citing *Sproles*, 329 N.C. at 612-13, 407 S.E.2d at 502-03) (emphasis omitted).

The pertinent language in Lunsford's business and personal policies states that Farm Bureau promises to pay, up to its UIM policy limit,

> all sums the "insured" is *legally entitled to recover as compensatory damages* from the owner or driver of:
>
> > a. An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident"; and
> >
> > b. b. An "uninsured motor vehicle" as defined in

> Paragraphs a. and c. of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".
>
> The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

(Emphasis added.) The policies' definition of an "uninsured motor vehicle" includes an "underinsured motor vehicle."

In *Baxley*, 334 N.C. at 6-7, 430 S.E.2d at 899, we examined substantially similar policy language:

> The contractual language [at issue] is [the UIM carrier]'s promise to pay, up to its UIM policy limit,
>
> damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
>
> 1.  Bodily injury sustained by a covered person and caused by an accident; and
>
> 2.  Property damage caused by an accident.

Holding that interest is an element of "damages," *id*. at 11, 430 S.E.2d at 901, we held that, based on the pertinent policy language, the UIM carrier in *Baxley* was "obligated to pay pre-judgment interest up to its policy limits." *Id*. at 6, 430 S.E.2d at 898 (emphasis omitted). Our reasoning in *Baxley* regarding judgment interest has similarly been applied to costs. *See Wiggins v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 26, 35-36, 434 S.E.2d 642, 648 (1993) (rejecting, based on *Baxley*, the insurer's contention "that 'damages' does not include costs or interest").

The relevant language in Farm Bureau's policy is, we believe, materially indistinguishable from the policy language at issue in *Baxley*. Accordingly, the Court of Appeals erred in concluding that Farm Bureau was required to pay pre- and post-judgment interest and costs in excess of its remaining UIM policy limit of $350,000. Because Farm Bureau contractually capped its obligation to pay "compensatory damages" at its UIM coverage limit, Farm Bureau is not required to pay interest and costs over and above the $350,000 coverage amount. *See Baxley*, 334 N.C. at 11, 430 S.E.2d at 901 ("Since [the UIM carrier] promised to pay [the insured]'s resulting damages, it must now do so, up to, but not in excess of, its UIM policy limits.").

Lunsford nonetheless claims that Farm Bureau should be required to pay pre- and post-judgment interest because the judgment "was entered directly against Farm Bureau" due to Farm Bureau's "breach of its obligations under its insurance contract." This argument is misplaced. There is no underlying breach of contract claim against Farm Bureau in this case, and thus, such a claim could not have been the basis for the trial court's award of interest and costs. Rather, the basis for the award is Farm Bureau's promise to pay, up to its UIM coverage limit, the "compensatory damages" resulting from the named defendants' negligence. In such circumstances, our precedent "clearly establish[es]" that the extent to which a UIM carrier is required to pay judgment interest is controlled by "the specific terms of [the] policy." *Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 491, 467 S.E.2d 34,

40 (1996). Farm Bureau was permitted to, and did in fact, cap its liability for damages, including interest, at the amount of its UIM coverage limit. We accordingly reverse the Court of Appeals' decision with respect to interest and costs.

Conclusion

We affirm that part of the decision of the Court of Appeals holding than an insured is only required to exhaust the liability insurance coverage of a single at-fault motorist in order to trigger the insurer's obligation to provide UIM benefits. We reverse the decision of the Court of Appeals awarding interest and costs against the insurer in an amount that exceeds the amount the insurer contractually promised to pay under the terms of its policy with the insured. This case is remanded to the Court of Appeals for further remand to the Superior Court, McDowell County, for proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.

Justice HUNTER did not participate in the consideration or decision of this case.

No. 385PA13 – Lunsford v. Mills

Justice NEWBY dissenting in part and concurring in part.

The purpose of underinsured motorist (UIM) coverage in our state is to serve as a safeguard when tortfeasors' liability policies do not provide sufficient recovery—that is, when the tortfeasors are "under insured." That is simply not the case here. Plaintiff incurred damages amounting to $900,000. He brought suit jointly and severally against responsible tortfeasors whose total liability limits were $1,050,000. Those combined liability limits were more than sufficient to satisfy plaintiff's damages and were more than twice as high as plaintiff's $400,000 UIM limits. Not only does the majority incorrectly hold that UIM coverage was necessary in this instance, but the majority's outcome leaves plaintiff with $350,000 in excess of his agreed-to damages. By contrast, I would hold that UIM coverage was not activated in this case. Rather, under the UIM statute, coverage only applies when the policyholder's UIM limits are more than the combined limits of the insurance coverage of all jointly and severally liable tortfeasors against whom the plaintiff files suit. Consequently, I respectfully dissent.

At the time of the accident, the jointly and severally liable tortfeasors, Mills, his employer Crowder, and Buchanan, carried liability policies totaling $1,050,000 while plaintiff was covered by two UIM policies with North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) with combined limits of $400,000. After plaintiff filed suit against Mills, Crowder, and Buchanan, Buchanan's

provider, Allstate, tendered to plaintiff the $50,000 limits of Buchanan's policy. Six months later, plaintiff settled his claim with defendants Mills' and Crowder's coverage provider for $850,000. After the trial court approved plaintiff's settlement with the named defendants, Farm Bureau, as an unnamed defendant, moved for summary judgment, contending that plaintiff was not entitled to UIM coverage because the combined policy limits of the defendants exceeded plaintiff's UIM limits. Plaintiff also moved for summary judgment, insisting that Buchanan was an underinsured driver and that plaintiff was thus entitled to Farm Bureau's UIM policy limits of $400,000 less an offset of $50,000 for Buchanan's Allstate insurance payment. The trial court entered judgment in plaintiff's favor for $350,000, plus costs and pre- and post-judgment interest. Thus, plaintiff received $50,000 from Buchanan's insurer, $850,000 from the settlement with Mills and Crowder, and $350,000 from his own UIM policy with Farm Bureau for a total of $1,250,000 while settling his damages claims with the actual tortfeasors for only $900,000, which left untapped $150,000 of tortfeasor insurance.

The majority's holding is based on a fundamental misunderstanding of UIM coverage and the implementing statute, as well as a misunderstanding of Farm Bureau's argument. UIM insurance in North Carolina developed out of uninsured motorist (UM) insurance. James E. Snyder, Jr., *North Carolina Automobile Insurance Law* § 30-1 (3d ed. 1999). UM insurance provides recovery for a policyholder injured in an auto accident by the motor vehicle of a tortfeasor who has

no liability insurance. *Id.* By comparison, UIM coverage provides a secondary source of recovery for an insured when the tortfeasor has insurance, but the tortfeasor's liability limits are insufficient to compensate the injured party. *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989), *superseded on other grounds by statute*, Act of July 12, 1991, ch. 646, 1991 N.C. Sess. Laws 1550 (captioned "An Act to Prohibit the Stacking of Uninsured and Underinsured Motorist Coverage"). The UM and UIM statute is part of North Carolina's Motor Vehicle Safety and Financial Responsibility Act of 1953 (Act). N.C.G.S. §§ 20-279.1 to 279.39 (2013). The Act's purpose is

> to compensate the innocent victims of financially irresponsible motorists. The Act is remedial in nature and is to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. The purpose of the Act, we have said, is best served when [every provision of the Act] is interpreted to provide the innocent victim with the fullest possible protection.

*Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573-74, 573 S.E.2d 118, 120 (2002) (alteration in original) (citations and internal quotation marks omitted). Even though the Act is intended to provide "the fullest possible protection," *id.* at 574, 573 S.E.2d at 120, it is only activated when a plaintiff is "under insured." A plaintiff cannot, under the statute, obtain UIM proceeds if the tortfeasors' insurance is greater than the UIM coverage or is sufficient to compensate his damages. N.C.G.S. § 20-279.21(b)(4). The recovery provided by UIM coverage is only meant to augment inadequate recoveries obtained from underinsured tortfeasors. *Id.*

*Newby, J., dissenting in part and concurring in part*

(reducing UIM amounts by amounts received by the plaintiff from a tortfeasor's exhausted policy or policies). In other words, UIM coverage puts the insured claimant back in the position he would have occupied had the tortfeasor been insured at limits equal to the claimant's UIM limits. *See Nationwide Mut. Ins. Co. v. Haight*, 152 N.C. App. 137, 142, 566 S.E.2d 835, 838 (2002) (noting the statute's goal of putting a policy holder "in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the UM/UIM coverage" (citations and emphasis omitted)), *disc. rev. denied*, 356 N.C. 675, 577 S.E.2d 627 (2003).

Two provisions in the UIM statute in particular demonstrate this intent by the legislature to make UIM coverage a source of compensation secondary to tortfeasors' liability policies. *Elec. Supply Co. of Durham v. Swain Elec. Co.,* 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) (observing that, *inter alia*, "we are guided by the structure of the statute" in determining legislative intent (citations omitted)). The first is the reduction provision, which states:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.

N.C.G.S. § 20-279.21(b)(4) ("reduction provision"). Under the reduction provision, a UIM carrier reduces its applicable policy limits by amounts paid to the claimant from tortfeasors' exhausted policies.

The second supporting provision is the offset or recovery provision found in N.C.G.S. § 20-279.21(b)(3), which is incorporated by reference into subdivision 20-279.21(b)(4):

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of coverage, the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement for judgment resulting from the exercise of any limits of recovery of that person against any person or organization legally responsible for the bodily injury for which the payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

*Id.* at § 20-279.21(b)(3). This provision entitles a UIM carrier to use a claimant's judgment proceeds to recoup the UIM carrier's payments to the claimant. The presence of the reduction and offset provisions in the statute evinces a legislative intent for UIM coverage to be applicable only to the extent that other sources of recovery fail to compensate for the injury up to the UIM limits.[2] *Elec. Supply Co.,* 328 N.C. at 656, 403 S.E.2d at 294 ("An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes

---

[2] By contrast, some states apply an "excess coverage" approach whereby UIM coverage is activated when a tortfeasor's liability limits are exceeded by the insured's damages. 3 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance* § 38:9, at 38-31 (4th ed. Dec. 2004).

with the underlying reason and purpose of the statute." (citation omitted)); *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975) ("A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." (citation omitted)). The insured's UIM limits, not the insured's total damages, provide the ceiling for recovery. *See Fasulo v. State Farm Mut. Auto. Ins. Co.*, 108 N.M. 807, 810-11, 780 P.2d 633, 636-37 (1989) (discussing a UIM statute similar to subsection 20-279.21(b)(4)). Thus, an insured plaintiff's UIM recovery "is controlled contractually by the amount of the UIM policy limits purchased and available to her, not fortuitously by the number of tortfeasors involved in the accident." *Nikiper v. Motor Club of Am. Cos.*, 232 N.J. Super. 393, 398-99, 557 A.2d 332, 335, *certification denied,* 117 N.J. 139, 564 A.2d 863 (1989). The majority's holding runs contrary to the nature and purpose of UIM coverage.

With this understanding of the UIM statute's purpose in mind, it is necessary to consider closely the statute's controlling provision in this case—the activation provision. As an initial matter, the majority misreads Farm Bureau's argument. Farm Bureau is not insisting that the statute requires plaintiff "to exhaust not only Buchanan's liability limits, but also the policy limits of Mills and Crowder to the extent that they are liable as joint tortfeasors" in order for plaintiff to receive UIM benefits. Rather, Farm Bureau is asserting that UIM coverage is not applicable at all because plaintiff implicated $1,050,000 in liability coverage when he sued the

three tortfeasors. Because of this mischaracterization, the majority errs in its approach to the statute by focusing on the UIM's triggering (exhaustion) provision without first fully considering subdivision (b)(4)'s activation provision.[3] The distinction between the activation and triggering provisions is critical because if no vehicle meets the definition of an underinsured vehicle under the activation provision, then consideration of the subsequent triggering provision is unnecessary.

The activation provision is found in subdivision (b)(4), which is the portion of the statute governing UIM coverage. N.C.G.S. § 20-279.21(b)(4). A UIM carrier pays on its policy to an injured claimant when (1) the auto accident involves a tortfeasor who meets the statute's definition of an underinsured highway vehicle (the activation provision); and (2) the underinsured highway vehicle's liability coverage has been exhausted (triggering provision). *Id.*[4] The UIM statute's activation provision defines an underinsured highway vehicle as:

> [A] highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist

---

[3] The majority's analysis and interpretation of the activation provision is relegated to one paragraph with a citation to a case from New York interpreting, against the insurer, a provision in a claimant's insurance policy. That case did not interpret a statute and offers no support for an interpretation of North Carolina's statute.

[4] The relevant portions of the current version of this statute are identical to the 2009 version of the statute, which is the version applicable to this case. *White v. Mote*, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) ("Laws in effect at the time of issuance of a policy of insurance become a part of the contract . . . .").

coverage for the vehicle involved in the accident and insured under the owner's policy.

*Id.* The activation provision applies a comparison of limits approach—UIM coverage is activated when the insured's UIM policy limits are greater than the liability limits of policies connected with the tortfeasor's ownership, maintenance, or use of a highway vehicle. 3 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance* § 38:7 (4th ed. Dec. 2004) [hereinafter *Automobile Liability Insurance*]. In a scenario involving a single insured claimant and a single tortfeasor, application of the statute's activation provision is straightforward. If the insured's UIM limits are greater than the tortfeasor's liability limits, the insured's UIM coverage is activated. N.C.G.S. § 20-279.21(b)(4). Only then does subdivision (b)(4)'s triggering provision become relevant.

Under the triggering provision, once the tortfeasor's liability limits have been paid out to the insured, if the injuries have not been adequately compensated, the insured can collect from the UIM carrier up to the maximum amount of the UIM coverage limits minus the amount paid to the claimant under the tortfeasor's exhausted policy. *Id.* The net effect is that UIM coverage puts the insured claimant back in the position he would have occupied had the tortfeasor been insured at limits equal to the claimant's UIM limits. *See Haight*, 152 N.C. App. at 142, 566 S.E.2d at 838.

Though the activation provision's application is clear when only one tortfeasor is involved, we have not previously addressed whether, in a multiple tortfeasor scenario, the insured's UIM policy limits should be compared individually to each tortfeasor's liability limits or compared to the sum of the liability limits of all tortfeasors. When read in the broader context of the statute, the UIM's activation provision instructs comparing the insured's policy limits to the sum of the liability of all jointly and severally liable tortfeasors. More specifically, a vehicle is underinsured when "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident" with respect to the use of the vehicle is less than an insured's UIM limits. N.C.G.S. § 20-279.21(b)(4).

This interpretation of the activation provision is in consonance with the surrounding provisions of the statute and in keeping with the overall legislative intent of requiring UIM coverage to provide a limited source of compensation when a claimant is injured by tortfeasors who are collectively underinsured.[5] *Automobile Liability Insurance* § 41.3 at 41-42 (noting that under "comparison of limits" statutes like North Carolina's, "an underinsured motorist carrier may defeat underinsured motorist coverage by pointing to other liability coverages available to

---

[5] The legislative history of the statute asserted by Farm Bureau and addressed by the majority provides additional support for this interpretation. Because the activation provision is susceptible to multiple interpretations, the majority's dismissive "plain meaning" response to Farm Bureau's argument is unavailing.

the tortfeasor which, when aggregated, produce a totality of limits in excess of the underinsured motorist insured's limits, or *by aggregating the liability coverages of joint tortfeasors*." (emphasis added) (footnote call number omitted)); *see Nikiper*, 232 N.J. Super. at 397, 557 A.2d at 334 ("We conclude that where the amount paid by the insurors for the multiple tortfeasors equals or exceeds the amount of the UIM coverage, plaintiff has no UIM claim."); *see also Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (observing that "[l]egislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other"). In the case at hand it is contrary to the purpose of the statute to conclude that Buchanan's vehicle alone activates UIM coverage when the combined liability limits of the jointly and severally liable tortfeasors is $1,050,000 and plaintiff's UIM coverage is $400,000. Likewise, it is nonsensical to say a party is "underinsured" when the injured party settles with the tortfeasors for $150,000 less than their policies' coverage. *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) ("[W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." (citations and internal quotation marks omitted)).

Interpreting the first portion of the activation provision to require comparing UIM limits to the combined limits of jointly and severally liable tortfeasors is in

harmony with the immediately succeeding portion of the activation provision which addresses UIM coverage in the context of multiple victims. *State ex rel. Comm'r of Ins. v. N. C. Auto. Rate Admin. Office*, 287 N.C. 192, 202, 214 S.E.2d 98, 104 (1975) ("We are further guided by rules of construction that statutes *in pari materia*, and all parts thereof, should be construed together and compared with each other." (citation omitted)). The succeeding portion of the provision states:

> For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an "underinsured highway vehicle" if the total amount actually paid to that person *under all bodily injury liability bonds and insurance policies applicable at the time of the accident* is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C.G.S. § 20-279.21(b)(4) (emphasis added). This provision unambiguously contemplates comparing an insured plaintiff's UIM limits broadly to payments the plaintiff has received under all liability policies applicable at the time of the accident. It does not restrict the comparison of limits test to a single tortfeasor. Because this second portion of the activation provision requires aggregation of liability limits for the purposes of comparison in a multiple *victim* scenario, under the first portion of the activation provision, in a multiple *tortfeasor* scenario, the same aggregation of liability limits must apply. Otherwise, in a multiple victim, multiple tortfeasor scenario, the activation provision would produce conflicting determinations as to the existence of an underinsured highway vehicle with the

first portion requiring a one-to-one comparison and the second portion requiring a one-to-all comparison. An interpretation of the activation provision that limits policy comparisons to a single tortfeasor violates a basic rule of statutory interpretation by creating this conflict. *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977) ("Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences." (citations omitted)).

The majority contends that under Farm Bureau's approach, "insureds would be required to pursue all claims, including weak, tenuous ones, against all potentially liable parties, no matter how impractical, before being eligible to collect their contracted-for UIM benefits." As noted above, this conclusion arises from mischaracterizing Farm Bureau's argument as stating that UIM benefits should only be paid after plaintiff exhausts all applicable policies. The majority's policy concern disappears, however, when Farm Bureau's position is correctly understood to be that UIM coverage is not activated when the sum of the jointly and severally liable tortfeasors' policy limits is higher than plaintiff's UIM limits. In the instant case plaintiff chose to bring suit against the three defendants jointly and severally; no one was being "forced to sue any and all possible persons," *Lunsford v. Mills,* ___ N.C. App. ___, ___, 747 S.E.2d 390, 394 (2013), or "required to pursue all claims," as the majority insists. An attempt by a UIM carrier to demand that plaintiff pursue the other tortfeasors before being eligible for UIM benefits "would be in the realm of

bad faith." *Farm Bureau Ins. Co. of N.C. v. Blong*, 159 N.C. App. 365, 373, 583 S.E.2d 307, 312, *disc. rev. denied*, 357 N.C. 578, 589 S.E.2d 125 (2003). Our General Statutes already prohibit such actions. N.C.G.S. § 58-63-15(11)(f) (2013) ("Unfair Claim Settlement Practices"); *see also Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (concluding that "the act or practice of '[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,' also engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1" (alteration in original) (quoting N.C.G.S. § 58-63-15(11)(f)). The decision whether to pursue further litigation is within the control of the plaintiff unless he subrogates his claims to the insurer; a UIM carrier "cannot require an insured to pursue [other alleged tortfeasors] before exhaustion can occur." *Blong*, 159 N.C. App. at 373, 583 S.E.2d at 312. If plaintiff in this case had preferred to sue Buchanan alone and collect on his $50,000 policy limits, plaintiff's UIM coverage would have been activated and triggered. Having chosen, however, to pursue simultaneously claims against multiple tortfeasors whose combined liability limits far exceeded plaintiff's own UIM coverage, plaintiff was no longer able to access his UIM policy limits.

The majority further asserts, again under a misunderstanding of Farm Bureau's position, that requiring exhaustion before the receipt of UIM benefits would render "meaningless" the provisions granting UIM carriers subrogation and reimbursement rights. Under a proper consideration of Farm Bureau's position and

based on a proper reading of the activation provision, the provisions in question would not be surplusage. The subrogation provision noted by the majority is applicable when (a) underinsured motorist coverage is activated, and (b) a UIM carrier voluntarily pays out to the insured before the triggering provision has been satisfied. N.C.G.S. § 20-279.21(b)(4). This subrogation right is a necessary assurance to a UIM carrier who voluntarily, *id.* ("at its option"), chooses to pay its insured before exhaustion of a tortfeasor's policy limits. Granted, this scenario is not likely to occur. George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance* § 4:2, at 351 (2013-2014 ed.) (noting that these occasions are likely to be few). Nevertheless, this does not make the provision superfluous.

Lastly, the majority misapprehends subdivision (b)(4)'s thirty-day advancement-of-payment provision. The majority is incorrect in concluding that Farm Bureau has forfeited its rights to recovery from the proceeds of the Mills and Crowder settlement, N.C.G.S. § 20-279.21(b)(3) (incorporated into subdivision (b)(4) and entitling the UIM carrier to "the proceeds of any settlement for judgment" related to the plaintiff's injuries), because it failed to "preserve its subrogation rights" by not advancing its policy limits to plaintiff in a timely manner. When a UIM carrier fails to advance payment within thirty days of notice of a settlement with an underinsured motorist, it only forfeits its subrogation rights as to the underinsured motorist under N.C.G.S. § 20-279.21(b)(4) ("No insurer shall exercise

any right of subrogation or any right to approve settlement *with the original owner, operator, or maintainer of the underinsured highway vehicle* under a policy providing coverage against an underinsured motorist where the insurer has been provided with written notice before a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice." (emphasis added)).  That thirty-day deadline does not affect the UIM carrier's recovery rights against remaining tortfeasors.  Furthermore, the offset provision in N.C.G.S. § 20-279.21(b)(3) contains no requirement that a UIM carrier first pay out its limits before being entitled to a recovery against the proceeds paid by tortfeasors.  Nothing in the statute dictates that a UIM carrier forfeits its rights to offset against judgment recoveries from other parties by not paying out benefits in a timely manner.

The case relied on by the majority in support of its forfeiture conclusion, *State Farm Mutual Automobile Insurance Co. v. Blackwelder*, determined that the insurer preserved subrogation rights against the underinsured tortfeasor; it does not address a UIM carrier's right to recover proceeds paid by other tortfeasors.  332 N.C. 135, 418 S.E.2d 229 (1992).  In *Blong,* upon which the Court of Appeals relied in arriving at a conclusion similar to that of the majority, a UIM carrier paid out its policy limits to an insured and then argued it was entitled to an offset against any amounts received by the insured in subsequent actions against additional parties.

159 N.C. App. at 367-68, 583 S.E.2d at 308-09. Noting the UM/UIM statute's remedial nature, *Blong* nonetheless concluded that "the Act appears to allow for the type of subrogation that plaintiff claims." *Id.* at 373, 583 S.E.2d at 312. *Blong* answered the question whether the UIM carrier was entitled to an offset after having already paid out its UIM limits and gave a sequence of "how the procedure *may* play out." *Id.* (emphasis added). The holding in *Blong* does not "clearly obligate[ ] the UIM carrier to first provide coverage, and later seek [recovery]". *Lunsford*, ___ N.C. App. at ___, 747 S.E.2d at 394. Neither the UIM statute nor case law provides the necessary support for the majority's timing and forfeiture determination regarding Farm Bureau's entitlement to recovery. Furthermore, reading the UIM statute as requiring Farm Bureau to pay out its UIM limits promptly in order to protect the UIM policyholder is unnecessary; a UIM claimant is already protected by the Unfair Claim Settlement Practices statute from delayed payment, as noted above. Regardless whether UIM coverage was activated in this case, Farm Bureau should nevertheless be entitled to recovery.

The majority's insistence on reading the activation provision as limited only to a comparison of the UIM policy limits and an individual tortfeasor's policy limits in this case allows plaintiff to collect from his $400,000 UIM policy even though he has already settled damages claims for $900,000 with the tortfeasors, which is $150,000 less than the maximum primary insurance coverage available. The legislature never intended for UIM coverage to serve this role, providing plaintiff an

excess recovery of $350,000. Rather the legislature intended for plaintiff's UIM policy to serve as a safeguard to protect plaintiff in the event the tortfeasors' liability policies failed to compensate plaintiff for injuries up to $400,000. This legislative intent is best carried out by first comparing plaintiff's UIM limits to the combined limits of all the auto policies implicated in the lawsuit. Even though the majority's holding provides "the fullest possible protection," *Pennington*, 356 N.C. at 574, 573 S.E.2d at 120, it contravenes the activation provision's requirements and the legislature's intent to reduce UIM payouts by amounts recovered from all liable parties. Accordingly, the trial court erred in requiring Farm Bureau to make the $350,000 payment. Nevertheless, were UIM coverage properly implicated, I agree with the majority that the awarding of costs and interests against the insurer is limited contractually by the terms of the insured's policy. Thus, I respectfully concur in part and dissent in part.